## S94A0099. BROWN v. THE STATE.
### (441 SE2d 235)

BENHAM, Presiding Justice.

Appellant was convicted of malice murder and sentenced to life imprisonment in connection with the death of a man appellant claimed to have shot in self-defense.[1] On appeal, he contends that the evidence was insufficient to support the verdict, that the trial court erroneously denied a motion for new trial, and that the trial court's instructions to the jury contained reversible error.

1. The State presented evidence that the unarmed victim was fatally wounded in appellant's home by any one of the three shotgun blasts fired by appellant that struck the victim in the jaw, the chest, and the abdomen. The sheriff to whom appellant reported the homicide testified that appellant told him that he had been awakened from his slumber on a sleeper sofa at dawn by the sound of the unlocked front door closing. When a tall male stranger stood beside the bed, appellant grabbed a nearby loaded shotgun and fired the fatal shots. A pack of Kool cigarettes was found on an end table adjacent to the sleeper sofa. During the homicide investigation which followed, the Georgia Bureau of Investigation case agent interviewed several people who had seen appellant and the victim together at a fast-food restaurant and a private club in the early morning hours of the day the victim was killed. The agent also learned that appellant smoked Marlboro cigarettes, that the victim smoked Kool cigarettes, and that the victim had purchased a pack of Kool cigarettes while with appellant several hours before the homicide. The victim's brother testified that the victim considered appellant, whom he had met while both were receiving care in an alcohol treatment center, as a friend.

When confronted with this evidence, appellant told several versions of the events. He initially admitted he had been with the victim, but asserted he had just met the victim that day. He told the GBI agent that he and the victim went to appellant's residence, that the victim left without entering appellant's home when appellant would not give him a ride home, that appellant fell asleep but was awakened

---

[1] The crime occurred on June 30, 1991. Appellant was arrested on July 12, 1991, and indicted on August 19, 1991. His trial took place on August 24-26, 1992, and he was sentenced to life imprisonment on August 26. His motion for new trial, filed September 24, 1992, was denied on September 27, 1993, and a timely notice of appeal was filed on October 12, 1993. The case was docketed in this court on October 21, 1993, and submitted for decision on December 3, 1993.

by the return of the victim and, frightened, shot him. Appellant later stated that he had shot the victim after the victim, while standing over appellant's bed, had threatened to hurt appellant if he did not drive the victim home. At trial, appellant testified that he had been with the victim, but had dropped him off approximately two miles from appellant's home, telling him a neighbor would drive him anywhere for pay. Several hours later, appellant awoke and kicked a man who had entered his darkened home. As the intruder picked himself up and threatened to kill appellant, appellant grabbed his shotgun and killed the intruder. There was sufficient evidence to authorize a jury to conclude beyond a reasonable doubt that appellant murdered the victim. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During the State's closing argument, appellant's attorney moved for a mistrial on the ground that the district attorney was suggesting that appellant and his attorney had fabricated testimony to present a justification defense. Defense counsel renewed his motion after the trial court instructed the district attorney to make it clear in his argument that he was not saying counsel suggested to appellant what his story should be, and told the jury that they should not imply from the prosecutor's remarks that defense counsel had engaged in wrongdoing and instructed them to disregard any impression of wrongdoing they might have drawn.

When a motion for mistrial is based on purportedly improper statements of a prosecutor, the trial court is authorized to take such action as it deems necessary to prevent harm to the defendant, and a new trial will not be granted unless it is clear that the action taken did not eliminate the statement from the jury's consideration. *Chancey v. State,* 256 Ga. 415 (10) (349 SE2d 717) (1986). In the case at bar, the trial court was specific in its curative instructions that the jury disregard any improper inference it might have drawn from the argument. Furthermore, the statement made by the prosecutor was a logical deduction from the evidence that appellant did not tell investigating officers of the threat the victim purportedly made until he had spoken with an attorney who, in appellant's words, "may have" explained the justification defense to appellant. See *Alexander v. State,* 263 Ga. 474 (2) (a) (435 SE2d 187) (1993).

3. (a) Citing *Cage v. Louisiana,* 498 U. S. 39 (111 SC 328, 112 LE2d 339) (1990), appellant contends due process was violated by the portion of the trial court's jury instruction on reasonable doubt which stated, "the State is not required to prove the guilt of the accused beyond all doubt or to a mathematical certainty. Moral and reasona-

ble certainty is all that can be expected in a legal investigation."[2]

In *Cage*, supra, the Supreme Court of the United States invalidated a jury instruction because it impermissibly equated reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," *and* referred to "moral [and reasonable] certainty." Where, as here, the jury charge properly defined reasonable doubt,[3] a reference to a "moral and reasonable certainty" did not lessen the burden of proof necessary to obtain a conviction, and therefore did not violate the Due Process Clause. *Bradford v. State*, 261 Ga. 833 (2) (412 SE2d 534) (1992); *McDuffie v. State*, 210 Ga. App. 112 (2) (435 SE2d 452) (1993); *Starr v. State*, 201 Ga. App. 73, 74 (410 SE2d 180) (1991). Cf. *Vance v. State*, 262 Ga. 236 (2) (416 SE2d 516) (1992).

(b) Appellant next contends due process was violated by the trial court's instruction that the jury could, in its discretion, infer criminal intent from appellant's conduct, and could, in its discretion, infer intent to kill from an unjustified and intentional use of a deadly weapon by a person of sound mind and discretion.[4] Appellant maintains that the charges were unconstitutional because they permitted the jury to find the essential element of intent, not through a process of rational judgment, but through the exercise of unbridled discretion. Inasmuch as the charge was sufficiently clear to be understood by jurors of ordinary capacity and understanding, we decline appellant's invitation to assume a possible adverse construction. See *Murdix v. State*, 250 Ga. 272 (2) (297 SE2d 265) (1982).

(c) Appellant next asserts that the trial court's instruction on conflicts in testimony (Suggested Pattern Jury Instructions, 2 (F)) invaded the province of the jury by telling that body how to resolve conflicts and by limiting that body's ability to reject testimony to only that testimony it was unable to reconcile. As the charge imposing upon the jury the duty to settle conflicts in testimony was couched in conditional language and was immediately preceded by the pattern instruction on the credibility of witnesses and its litany of factors to be considered in determining credibility, we fail to discern reversible error in the giving of the charge.

(d) Lastly, appellant contends that the penultimate sentence in the pattern instruction on "Voluntary intoxication; insanity resulting from excessive continued use of alcohol" (Suggested Pattern Jury In-

---

[2] The trial court gave the pattern instruction on presumption of innocence, burden of proof, and reasonable doubt recommended by the Council of Superior Court Judges of Georgia. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2d ed. 1991).

[3] The trial court gave the pattern jury instruction on reasonable doubt. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2 (D) (2d ed. 1991).

[4] The trial court gave the suggested pattern jury instructions on intent, inferences, and that there was no presumption of criminal intent. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2 (I), 2 (I) (1), 3 (G) (2d ed. 1991).

structions, 3 (Z) (4)) required the jury to make a determination as to the validity of a statement of the law of criminal responsibility. However, the questioned charge, which has been limited to cases wherein a mental impairment equated with "more than temporary" brain function alteration negates the defendant's ability to distinguish between right and wrong (*McEver v. State*, 258 Ga. 768, fn. 2 (373 SE2d 624) (1988)), was not applicable as there was no evidence of such impairment in the case at bar. Therefore, appellant cannot show the harm required to obtain reversal of his conviction, even if error is assumed.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 21, 1994.

*Joe H. Thalgott, Larsen & Larsen, Celia Larsen, William W. Larsen, Jr.,* for appellant.

*Ralph M. Walke, District Attorney, Michael J. Bowers, Attorney General,* for appellee.