## A99A0445. ESTEP v. THE STATE.
(518 SE2d 176)

POPE, Presiding Judge.

Defendant Leslie Estep was convicted by a jury of cruelty to children. She appeals following the denial of her motion and amended motion for new trial.

Dennis Fish, an investigator with the Habersham County Sheriff's Department, testified that he and a Department of Family & Children Services caseworker, Angela Lingerfelt, were called to the Habersham Medical Center after Estep's three-year-old daughter was brought into the emergency room with a broken leg. Fish and Lingerfelt both testified that Estep initially told them that she did not know how the victim broke her leg. Fish testified that he interviewed Estep's six-year-old son outside her presence and the son told Fish that his mother was mad and threw his sister down on the floor. Lingerfelt testified she asked the victim what happened to her leg and she responded "mommy hurt me." Lingerfelt testified that at that point Estep began crying and stated that she must have "dropped the [victim] down too hard." Because the incident occurred in Banks County, the case was turned over to Banks County DFACS and law enforcement. James O'Neal, who was then an investigator with Banks County DFACS, testified that he also talked with Estep's son at the hospital on the day of the incident, and that the son told him that his mother was upset with the victim and threw her in or against the crib or playpen. Peggy Woodward, a Banks County DFACS caseworker, testified that Estep told her that the victim and her son continued to get in the playpen with her one-year-old despite Estep's repeated admonitions for them not to do so, and that she physically removed the victim from the playpen to the floor. Initially, Estep told the caseworker that she did not realize the victim had been hurt, but she later recanted and admitted that she heard the bone in the victim's leg crack when she put her down. Estep later told a Banks County Sheriff's Investigator that she was having a hard time at home, that the children were unruly and that "she just had all she could take, and when [her daughter] climbed into the playpen the last time, she just went out and jerked [her] up and just dropped her on the floor." Estep also gave the investigator a written statement that she "grabbed [the victim] and dropped her on the floor."

1. In her first three enumerations of error, Estep argues that her right to be present at trial and her right to confront witnesses against her were violated when portions of the proceedings were conducted in her absence.

The transcript shows Estep was present on the first day of trial, but was absent for the remainder of the proceedings. The trial court noted on the record that Estep was not present in court by 9:20 a.m.

and that he had clearly stated the day before that proceedings would reconvene at 9:00 that morning. Defense counsel objected to proceeding in Estep's absence and advised the court that he did not know why Estep was absent. The trial court noted that "[a]t this point the best information available to the Court is that the Defendant is not present and no reason of substance is known for her failure to be present this morning. I'm going to proceed at this time because of the circumstances with the doctors, the work that they need to be doing, and the fact that they're being required to be here by subpoena." Following the doctors' testimony, the trial court stated on the record that at about 9:30 a.m. he received a note stating that Estep's mother had called defense counsel's office and told them Estep's car had broken down but that she was on her way. At that point the trial court decided to "wait a while and let's see. . . . [W]e'll try to find out what her situation is before we proceed any further."

The state rested its case, and defense counsel stated the only witness he planned to call was Estep. The trial court granted a recess/lunch break of approximately two hours in order to give Estep time to arrive. Defense counsel also drove along the road he thought Estep would be traveling to try and find her. The trial court subsequently decided to recess until 8:30 a.m. the following day and issued a bench warrant to procure Estep's presence.

Estep was not present when court reconvened the following morning. The prosecuting attorney advised the court that the sheriff's office had been unable to locate Estep and the bench warrant had not been served. Defense counsel also advised the court of his efforts to locate Estep and stated he had talked to her the previous evening and advised her to be in court that morning by 8:30 a.m. The trial court then made a finding that Estep was voluntarily absent, and that the trial should go forward. Defense counsel objected to the court's ruling on the basis that there was no evidence that Estep's absence was voluntary. At 10:04 a.m., after the jury had been charged, defense counsel reported that Estep had called his office and was on her way. However, Estep never arrived. The jury returned a guilty verdict, and Estep was sentenced to ten years, three to be served in confinement and the remainder to be served on probation, provided certain conditions were first met.

Relying on *Goodroe v. State*, 224 Ga. App. 378 (480 SE2d 378) (1997), Estep argues the trial court erred in conducting the trial and imposing sentence in her absence.

> Pursuant to Art. I, Sec. I, Par. XII of the Georgia Constitution, it is the legal right of a person accused of crime in this State to be present at all stages of his trial. The accused and his counsel have the right to be present at every stage of

the proceedings and personally see and know what is being done in the case.

(Citations and punctuation omitted.) *Goodroe v. State*, 224 Ga. App. at 380. The state argues *Goodroe* is distinguishable because Estep was out on bail and voluntarily absented herself from the proceedings. We agree. As our appellate courts have repeatedly held "[c]onfrontation rights are personal to the accused and are waived when the accused is free on bail and voluntarily absents himself from the trial." *Byrd v. Ricketts*, 233 Ga. 779, 780 (213 SE2d 610) (1975).

In this case the sequence of events surrounding Estep's absence supports the trial court's finding that her absence on the second and third days of trial was voluntary. "The burden of determining the cause of the defendant's absence was on [her] counsel, not on the trial judge." *Smith v. State*, 139 Ga. App. 515, 517 (228 SE2d 705) (1976). "[Estep] voluntarily absented [herself] from the court since [she] was free on bail and clearly knew the proceedings had begun, but had not made sufficient arrangements to attend." *Winfield v. State*, 210 Ga. App. 849, 851 (1) (437 SE2d 849) (1993); *Gee v. State*, 212 Ga. App. 422, 423 (1) (442 SE2d 290) (1994); see also *Yancey v. State*, 219 Ga. App. 116 (464 SE2d 245) (1995); *Brown v. State*, 199 Ga. App. 856, 857 (2) (406 SE2d 516) (1991).

Moreover, contrary to Estep's contention otherwise, the court was authorized to sentence Estep in her absence. "[V]oluntary absence of the accused waives his right to be present when sentence is imposed." *Byrd*, 233 Ga. at 780. See also *Croy v. State*, 168 Ga. App. 241 (1) (308 SE2d 568) (1983). Under these facts we find Estep waived her confrontation rights and her right to be present during the trial. Estep's first three enumerations of error are thus without merit.

2. Estep next argues that the trial court erred in admitting evidence that Forsyth County DFACS previously had investigated her after bruising was noticed on her son. During an interview, Estep's son, who was at that time four years old, stated that Estep had hit him with a rock on his leg. Estep told the caseworker that her son had been "pitching a fit" and she grabbed him by the arm and "he tripped out of the car and fell onto the rocks." No charges were filed against Estep as a result of this incident.

On appeal, Estep argues that the trial court erred in admitting the prior act to prove her criminal intent in this case. But the record shows that Estep did not raise this objection below. At the similar transaction hearing Estep argued that the evidence should not be admitted because the acts lacked similarity; she did not challenge the *purpose* for which the evidence was being admitted. "It is well settled that a reason urged by enumeration of error on appeal which

is different from that urged below will not be considered for the first time on appeal." (Citations and punctuation omitted.) *Moon v. State*, 199 Ga. App. 94, 97 (2) (404 SE2d 273) (1991) (physical precedent only); *Hunter v. State*, 202 Ga. App. 195, 196-197 (3) (413 SE2d 526) (1991).

3. Relying on *Woodward v. State*, 269 Ga. 317, 321-323 (3) (496 SE2d 896) (1998), Estep also argues the trial court erred by allowing witnesses to testify about statements her son made to them about the incident. In *Woodward*, our Supreme Court held the 1995 amendment to our Child Hearsay Statute, OCGA § 24-3-16, which allowed the admission into evidence of hearsay statements made by a child under the age of 14 who witnesses an act of physical or sexual abuse inflicted upon another, unconstitutional because it violated the equal protection clauses of our state and federal constitutions.

We note at the outset that this issue may not have been preserved for appellate review. The trial transcript shows that at trial Estep objected to the testimony at issue here on the basis that the state had not presented an adequate foundation for admission of the evidence and also urged a violation of her confrontation rights. The trial court specifically questioned defense counsel to ensure that there was no other basis for objection. Consequently, it is arguable that Estep's objection was insufficient to preserve the ground now urged on appeal.

However, even assuming this issue is properly before us, reversal is not required. Division 4 of *Woodward* makes clear that "erroneous admission of the [child] witness's hearsay statements is only reversible if it appears likely that the hearsay contributed to the guilty verdict." *Woodward v. State*, 269 Ga. at 324 (4). Estep argues that reversal is required here, because the hearsay statements went to the issue of intent. We disagree that reversal is required. The witness' statements were merely cumulative of Estep's own statements that she was angry when the incident occurred. See *Whatley v. State*, 270 Ga. 296, 299 (7) (509 SE2d 45) (1998). Moreover, as the state points out, the most "damaging" testimony on the issue of intent came from the orthopedic surgeon who treated the victim, who testified the type of injury the victim suffered was usually caused by an intentional act, not by an accident. Reversal of Estep's conviction is not required under the facts of this case.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED MAY 19, 1999.

*Kevin R. Christopher*, for appellant.

*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.