## A00A1025. CALDWELL v. THE STATE.
### (542 SE2d 564)

ELDRIDGE, Judge.

Following a bifurcated trial, a Fulton County jury found William Caldwell guilty of armed robbery and possession of a firearm by a convicted felon. Finding no error, we affirm his convictions.

Viewed in a light to support the jury's verdict,[1] the record shows that the manager of the Church's Fried Chicken restaurant at 2558 Martin Luther King, Jr. Drive, Rose Abdel-Karim, was locking up the restaurant after closing. The cook, Calvin Fletcher, and his girlfriend were also on the scene; Abdel-Karim had asked them to remain until she had finished closing and had gotten to her car. As she was locking the door, a man with a gun came around the restaurant. He approached manager Abdel-Karim; grabbed her purse with the words, "give me the purse, bitch"; and ran into the woods behind the restaurant. Shortly, after the robbery, Caldwell was apprehended as fitting the description given by the witnesses. On the scene, he was identified by all three witnesses as the armed robber. Caldwell then told the arresting officer that he committed the armed robbery to get money for back child support. He led the officer to the victim's purse, which had been discarded in the woods behind the store; a trail of the victim's credit cards led directly to the weapon, which had been discarded six feet from the purse. Following the jury's verdict on the armed robbery count of the indictment, a certified copy of Caldwell's previous 1983 conviction for armed robbery was put before the jury to support the indicted charge of possession of a firearm by a convicted felon.

1. Caldwell claims the trial court's curative instructions, given after defense counsel questioned a State's witness about his alleged participation in the armed robbery, constituted an improper statement of opinion as proscribed by OCGA § 17-8-57. The resolution of this issue requires consideration of the following factual background:

Caldwell's defense was that "someone else" committed the armed robbery and that he was misidentified by the State's witnesses. However, defense counsel chose to go further and suggest to the jury that the actual perpetrator was a friend of one of the State's witnesses, the cook Fletcher; that Fletcher conspired with this friend to rob the Church's Chicken restaurant; that the friend showed up at Church's too late to accomplish the robbery of the restaurant and thus opted, instead, to rob manager Abdel-Karim; and that, because the robbery of the restaurant did not go as planned, Fletcher was somehow forced

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

to pin the robbery of the manager on Caldwell:

> [Defense Counsel:] Mr. Fletcher, did you not, in fact, conspire with somebody to rob the Church's Chicken that night?
> [Fletcher:] No, I did not.
> [Defense Counsel:] Did you, in fact — did not, in fact, a friend of yours walk up and rob Rose, sir, at gunpoint?
> [Fletcher:] No. Are you trying to say that's [Caldwell] my friend? I ain't never seen that man a day in my life.
> [Defense Counsel:] Not Mr. Caldwell, a friend of yours?
> [Fletcher:] No.
> [Defense Counsel:] Isn't it a fact that when your friend bungled the job of robbing the Church's, that you decided that you would finger someone else?
> [Fletcher:] No.
> [Defense Counsel:] You said that this happened about 11:00 o'clock at night? . . . And your friend failed to come to rob the place that you had planned at 10:00 o'clock; is that correct?
> [Fletcher:] I don't know anything about that. I really don't, serious. I don't know why you would approach me with these type of questions. I —.

The prosecutor objected to this line of questioning and argued that defense counsel was improperly attempting to cast suspicion on Fletcher based on foundationless questions. By way of foundation, defense counsel asserted that Fletcher had a prior, nine-year-old conviction for armed robbery and that he was reluctant to testify at trial. Counsel argued that such "proof" showed a good faith basis for a conspiracy theory.

> A defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must show that the other person has recently committed a crime of the same or similar nature. Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.[2]

Here, not only did Caldwell fail to proffer evidence which raised a reasonable inference of his innocence, especially in light of his con-

---

[2] (Citations and punctuation omitted.) *Anderson v. State*, 238 Ga. App. 866, 873-874 (519 SE2d 463) (1999).

fession to the offense, but there was no evidence that Fletcher ever committed the type of crime Caldwell accused him of, i.e., conspiracy to commit armed robbery. In fact, Caldwell introduced no "evidence" on this issue at all; the jury was to draw inferences solely as a result of defense counsel's questions. Without factual basis and through unsupported questions, alone, Caldwell sought to raise a conjectural inference as to the commission of the crime by some unknown third person in conspiracy with Fletcher. Defense counsel's questioning was tantamount to testifying and was not admissible.

And that is what the trial court found pursuant to the State's evidentiary objection. The trial court stated:

> She [defense counsel] had a wide latitude to cross-examine him; however, when a lawyer asks a question of a witness when that lawyer knows that they have absolutely not one shred of evidence to back up the proposition that is inferred by the question, that's what is known among the profession as a cheap shot. I can't stop it, but I can tell the jury what it is, and that's what I intend to do. Now, if you've got any evidence about conspiracy for a third party, bring it on. I want it in if there's any such evidence. But to ask these questions to try to plant something like that in the mind of the jury when you know you don't have any evidence for it is just a cheap shot, and I'm going to explain it to the jury.

Defense counsel offered no evidence in support of her contentions.

Thereafter, the trial court gave the following curative instruction, which separated the actual evidence adduced from the improper inferences raised by the inadmissible questions:

> Ladies and gentlemen of the jury, please give attention to this. Sometime shortly before we recessed yesterday afternoon, defense counsel asked Mr. Fletcher, who was the witness at that time, a question something to the effect Mr. Fletcher, isn't it a fact that you conspired with a friend of yours to commit this robbery; and when it was bungled and he ran away, in order to save your own skin, you decided to identify the defendant in this case. Now, defense counsel has the solemn duty to defend her client. She has wide latitude in asking questions and examination and cross-examination, and she wouldn't be doing her duty if she didn't do that within the ethical balance of the law. You, as jurors, however, are bound by the evidence. You must not base your verdict on inferences or speculation or anything that is not supported by evidence. The evidence in this case

was the witness was asked did you conspire with another person, weren't you the one behind all of this. The answer to that question was, no. And until evidence is produced to change your opinion about that, the evidence is no.

Defense counsel objected by claiming the judge's instruction "tried to explain a witness' testimony" while "[t]he jury is supposed to decide the credibility of the witness and each witness that takes the witness stand." Thereafter, although not cited to this Court by Caldwell on appeal, the trial court clarified its instruction and addressed Caldwell's concern by also charging the jury:

> There's another matter I want to clear up with you while we're here. Earlier in the trial a question was asked of witness Fletcher to the effect, isn't it true that you conspired with a friend of yours to commit this robbery and that now you're testifying to get yourself off the hook. I remind you that a question is not evidence and that you must base your verdict on evidence that you heard at trial. I would now elaborate that to say this: You're bound by the evidence that you hear during the trial, that you believe. In no way did I intend to tell you that you had to believe what any witness had said was true. So please understand that you are always the sole judges of what evidence you will believe or not believe, and this court cannot tell you what you must believe.

Following this second curative instruction, Caldwell did not object or renew his motion for mistrial.

Caldwell's failure to renew objection following the trial court's second curative instruction would generally be viewed as a waiver of any alleged violation of OCGA § 17-8-57 on the basis upon which Caldwell objected, i.e., an improper expression regarding the credibility of Fletcher's testimony.[3] However, in reversing this Court in its recent decision in *Paul v. State*,[4] the Supreme Court of Georgia announced a new rule of law wherein a claim of error alleging a violation of OCGA § 17-8-57 is not waived by an attorney's failure to object, if such violation constitutes "plain error": "[W]e will apply the plain error rule to death penalty cases[ ] and other criminal cases in

---

[3] *Billups v. State*, 234 Ga. App. 824, 829 (3) (507 SE2d 837) (1998) ("'Where the trial judge gives corrective instructions and thereafter counsel fails to request further instruction or renew his motion for mistrial, an enumeration addressed to such ground is without merit.'").

[4] 272 Ga. 845 (537 SE2d 58) (2000).

which the trial court violates OCGA § 17-8-57."[5] This, although for 25 years the failure to object to an alleged violation of OCGA § 17-8-57 has resulted in the waiver of such claim on appeal.[6] In fact, we have been especially assiduous in applying waiver ever since the Supreme Court of Georgia granted certiorari to vacate an opinion of this Court for *not* finding waiver:

> The Court of Appeals opinion appears to hold that the purported statements require reversal regardless of whether there was a contemporaneous objection entered. The question of whether Code Ann. § 81-1104 [(now OCGA § 17-8-57)] has been violated is not reached unless an objection or motion for mistrial is made. . . . The failure of the appellant to object to the questions or to move for a mistrial at the trial estopped him from raising an objection on appeal.[7]

Notwithstanding such precedent, we will, of course, follow the current mandate of our Supreme Court as articulated in *Paul v. State*. And although the "plain error" rule is usually applied only in death penalty cases or other criminal cases involving "exceptional circumstances,"[8] we will do as directed and apply such rule to every criminal case alleging a violation of OCGA § 17-8-57. As such, we will determine herein whether those portions of the trial court's instruction about which Caldwell complains constitute "plain error" and thus require reversal. If not, Caldwell's claim will be waived.[9] "Plain error is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding."[10]

(a) Caldwell first claims error in the trial court's instruction that

---

[5] Id. at 849 (3).

[6] See *Pickren v. State*, 272 Ga. 421, 426 (8) (530 SE2d 464) (2000); *Cammon v. State*, 269 Ga. 470, 475 (8) (500 SE2d 329) (1998); *Wilson v. State*, 268 Ga. 527, 529 (5) (491 SE2d 47) (1997); *Waldrip v. State*, 267 Ga. 739, 751 (20) (482 SE2d 299) (1997); *Rowe v. State*, 266 Ga. 136, 137 (2) (464 SE2d 811) (1996); *Crowe v. State*, 265 Ga. 582, 594 (19) (458 SE2d 799) (1995); *Gardner v. State*, 263 Ga. 197, 200 (429 SE2d 657) (1993); *Newton v. State*, 259 Ga. 853, 854 (5) (388 SE2d 698) (1990); *Walker v. State*, 258 Ga. 443, 444 (370 SE2d 149) (1988); *Kimbrough v. State*, 254 Ga. 504 (3) (330 SE2d 875) (1985); *Driggers v. State*, 244 Ga. 160, 162 (2) (259 SE2d 133) (1979); *Davis v. State*, 234 Ga. 730, 731 (2) (218 SE2d 20) (1975).

[7] (Citations and punctuation omitted.) *State v. Griffin*, 240 Ga. 470 (241 SE2d 230) (1978).

[8] *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986). See *United States v. Atkinson*, 297 U. S. 157, 160 (56 SC 391, 80 LE 555) (1936); *Silber v. United States*, 370 U. S. 717, 718 (82 SC 1287, 8 LE2d 798) (1962). See also *Weems v. State*, 268 Ga. 142, 145-146 (11) (485 SE2d 767) (1997).

[9] *Buice v. State*, 239 Ga. App. 52, 56 (520 SE2d 258) (1999) ("[a]s this is not a case of plain error, [defendant] waived the error by failing to object"); *Kapua v. State*, 228 Ga. App. 193, 196 (2) (491 SE2d 387) (1997).

[10] (Citation and punctuation omitted.) *Buice v. State*, supra at 56.

"[y]ou must not base your verdict on inferences or speculation or anything that is not supported by the evidence." Although Caldwell failed to object to this portion of the court's instruction, he now claims that such instruction interfered with the jury's function as sole arbiter of the credibility of witnesses.[11]

However, this portion of the trial court's instruction was a correct statement of the law.[12] As such, the court's statement was not so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. Thus, in the absence of "plain error," Caldwell's failure to object waives this claim of error.

(b) Caldwell next claims error in the trial court's instruction: "The evidence in this case was the witness was asked did you conspire with another person, weren't you the one behind all of this. The answer to that question was, no. And until evidence is produced to change your opinion about that, the evidence is no." Caldwell contends the trial court's instruction was an improper expression of opinion as to what had been *proved*. However,

> it must be recognized there is a difference between evidence and proof. Evidence tends to establish or disprove an alleged matter of fact in issue. Proof is the effect of evidence, while evidence is merely the means of making proof. A fact is not proved unless it is established.[13]

In this case, the trial judge neither expressed his opinion nor commented on what was proved. The evidence was that Fletcher testified "No," he did not conspire to commit the offense. The trial court restated only what the testimony was, absent the improper inferences, and there was no evidence to the contrary. Restating the evidence is not an expression of opinion as to whether that evidence actually proved the fact contained therein.[14] "There is a wide difference between saying that a particular thing has been proved and saying that there has been testimony on that thing."[15]

The dissent, however, maintains the trial court erred because, "[h]ere the trial court told the jury the effect of the testimony was to

---

[11] OCGA § 24-9-80.

[12] See, e.g., OCGA § 24-4-6 (circumstantial inferences must be based on "proved facts"); *Strozier v. State*, 236 Ga. App. 239, 241 (511 SE2d 295) (1999) ("[c]onvictions in criminal cases must be based on facts and evidence").

[13] (Citations and punctuation omitted.) *Mooney v. State*, 221 Ga. App. 420, 424 (2) (471 SE2d 904) (1996).

[14] *Ridgeway v. State*, 174 Ga. App. 663, 667 (7) (330 SE2d 916) (1985).

[15] (Citation and punctuation omitted.) *Thornton v. State*, 191 Ga. App. 801 (1) (383 SE2d 181) (1989).

deny what Caldwell was trying to establish and that until evidence to the contrary was introduced they were bound by the evidence that 'the answer is no.'" But this does not constitute error. It must be remembered that it was precisely "what Caldwell was trying to establish" through improper questions that the trial court sought to correct through its instructions. Telling a jury that they are bound by the evidence presented at trial, as opposed to factually baseless questions, neither expresses an opinion as to whether the evidence actually proved the fact contained therein nor expresses an opinion as to the credibility of the witness from whom the evidence is derived.

And, in fact, in its second curative instruction to which there was no objection, the trial court specifically stated to the jury that "[i]n no way did I intend to tell you that you had to believe what any witness had said was true[;] . . . you are always the sole judges of what evidence you will believe or not believe, and this court cannot tell you what you must believe." The jury was then left to determine whether or not to believe Fletcher's "No," i.e., whether such evidence was "proved."

Accordingly, the trial court's statement was not so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. And, as a consequence, Caldwell's claim of error is waived by failing to renew objection on this issue after the court's curative instruction with regard thereto.

(c) Caldwell contends that, by virtue of the trial court's instruction, "the burden of proof that someone other than Appellant committed the offense . . . shifted to the defense." However, the State never had the "burden of proof that someone other than Appellant committed the offense." So, such nonexistent burden could not "shift" to Caldwell. Moreover, the court's reiteration of Fletcher's testimony that "No," he did not conspire to commit the offense, in no way relieved the State from proving that Caldwell *did* commit the offense. Accordingly, the court's instruction was not so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. And, as such, Caldwell's claim of error is waived for failure to renew objection after the second curative instruction on the issue of Fletcher's cross-examination testimony.

2. Next, Caldwell challenges the trial court's ruling on his *Batson*[16] motion as to the State's use of strikes against two black prospective jurors, Dexter Banner and Carolyn Tanner. We find no merit to such challenge.

---

[16] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

There was no showing of a prima facie case of discrimination against the State.[17] However, the prosecutor offered explanation for her use of strikes, asserting that both jurors were struck because each had a brother who had been convicted of robbery and that robbery is "a crime similar to what the defendant is charged with." The trial court properly found that such explanation was race-neutral.[18]

Caldwell contends that the State's otherwise race-neutral reason was pretext because "Appellee did not strike a white male number 18, Dale Ashworth who also stated that his brother had been convicted of a crime." However, the record shows that Ashworth stated he had a deceased uncle who had been convicted of writing a bad check some 15 years earlier. Because writing a bad check is not "a crime similar to what the defendant is charged with," and Ashworth's convicted relative was not his brother, Caldwell has failed to show Ashworth was a similarly situated juror so as to cast doubt on the prosecutor's otherwise race-neutral explanation.[19] Consequently, we cannot say the trial court's *Batson* ruling was clearly erroneous.[20]

3. Following a Uniform Superior Court Rule 31.3 (B) hearing as outlined in *Williams v. State*,[21] the trial court admitted Caldwell's two prior armed robberies as similar transaction evidence. Caldwell challenges this ruling on several grounds.

> In order to raise on appeal contentions concerning admissibility of evidence the specific ground of objection must be made at the time the evidence is offered, and a failure to do so will be considered as a waiver. All evidence is admitted as a matter of course unless a valid ground of objection is interposed.[22]

(a) First, on a procedural basis, Caldwell contends that after the USCR 31.3 (B) hearing, the trial court failed to make the three specific findings required by *Williams*. This issue is waived by Caldwell's failure to object on such ground at trial.[23]

(b) Next, Caldwell contends that the State failed to show the similarities between the independent offenses and the instant offense so as to establish a probative link. We disagree.

---

[17] The defense struck 11 white jurors. The State struck six black jurors. The petit jury comprised eight black jurors and four white jurors, with two black alternate jurors.

[18] *Slade v. State*, 270 Ga. 305, 306 (1) (509 SE2d 618) (1998).

[19] *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996).

[20] *Roundtree v. State*, 270 Ga. 504, 507 (5) (511 SE2d 190) (1999).

[21] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[22] (Citation and punctuation omitted.) *Shutt v. State*, 215 Ga. App. 617 (3) (451 SE2d 530) (1994). See *Young v. State*, 269 Ga. 478, 479 (3) (499 SE2d 60) (1998).

[23] *Willis v. State*, 214 Ga. App. 479, 481 (3) (c) (448 SE2d 223) (1994).

(i) With regard to the introduction of Caldwell's 1983 guilty plea to the armed robbery of Paschal's restaurant, Caldwell failed to challenge the similarity of the offense at the time such evidence was introduced. Instead, he objected because the State allegedly failed to prove that Caldwell was the perpetrator of the 1983 armed robbery. "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal."[24]

(ii) The State introduced Caldwell's 1980 guilty plea to the armed robbery of a teller at First Georgia Bank in order to show Caldwell's course of conduct in using firearms to demand and obtain cash money from personnel at business establishments. In both the independent offense and the instant case, the victims were women; both women were in the course of their employment at the time Caldwell approached them; in both instances Caldwell was armed; in both instances Caldwell called the victim a "bitch" and demanded money; both armed robberies occurred in close proximity, one in downtown Atlanta on Marietta Street and the other in downtown Atlanta on Martin Luther King, Jr. Drive; and in both instances, Caldwell was after cash only. "In determining admissibility of similar transaction evidence, the correct focus is upon the nature of the similarities, if any, between the extrinsic evidence and the crime charged, rather than incorrectly focusing upon any differences that may exist."[25] We find the State carried its burden of showing a sufficient degree of similarity for admission of this particular similar transaction evidence.

Moreover, in the instant case, Caldwell was caught on the scene; he confessed to the police that he committed the armed robbery; he led the police to Abdel-Karim's purse; he was identified by all three eyewitnesses as the perpetrator; and his prior armed robbery of Paschal's restaurant was properly admitted for the jury's consideration. Thus, we find it highly probable that error, if any, in the admission of Caldwell's 1980 armed robbery did not contribute to the verdict.[26]

(c) Caldwell contends that the trial court erred in allowing a witness to testify that "shots were fired" during Caldwell's 1983 armed robbery of Paschal's restaurant. However, Caldwell's trial objection was to the admission of evidence that he committed an aggravated assault against two police officers during the 1983 armed robbery.

---

[24] *Estep v. State*, 238 Ga. App. 170, 172-173 (518 SE2d 176) (1999); *Shutt v. State*, supra at 617. See also *Young v. State*, supra at 479.

[25] *Harris v. State*, 222 Ga. App. 52, 54-55 (473 SE2d 232) (1996). See also *Farley v. State*, 265 Ga. 622, 624 (2) (458 SE2d 643) (1995); *Nealy v. State*, 239 Ga. App. 651, 653 (1) (522 SE2d 34) (1999).

[26] *Tanner v. State*, 243 Ga. App. 640, 643 (533 SE2d 794) (2000).

Pursuant to that objection, no evidence was presented that Caldwell fired at the police. Subsequent testimony that "shots were fired" went only to the circumstances surrounding Caldwell's arrest for the 1983 offense and did not indicate who fired the shots. No objection was registered to such testimony at the time it was offered. Thus, appellate review of the instant contention is waived.[27]

(d) The record is clear that the two additional counts of aggravated assault contained in Caldwell's 1983 guilty plea were redacted prior to the jury's receipt of the indictment. We reject Caldwell's claims to the contrary.

(e) We find no error in the trial court's charge to the jury on the use of the similar transaction evidence. Caldwell did not request a limiting instruction prior to the admission of such evidence and did not object to the court's charge when such instruction was given at the State's request. Any complaints with regard thereto are waived.[28]

Further, contrary to Caldwell's contentions, the trial court's subsequent jury instruction at the close of evidence that "you are strictly limited in your consideration of the evidence as to the identity, state of mind, element of the offense charged in this indictment," makes our decision in *Rivers v. State*[29] inapplicable to the instant case.[30]

4. There was no error in the trial court's charge on reasonable doubt which substantially followed the Suggested Pattern Jury Instructions.[31]

5. Likewise, there was no error in the trial court's denial of Caldwell's motion to suppress Abdel-Karim's out-of-court identification of Caldwell. While identification evidence will be suppressed if the procedure used was impermissibly suggestive,[32] Caldwell has not shown that Abdel-Karim's identification was conducted in such suggestive manner. "On-the-scene showup identifications, like the one here, have been held not to be impermissibly suggestive but necessary due to the practicabilities inherent in such situations."[33] Also, Caldwell's claim that Fletcher tainted Abdel-Karim's identification was soundly denied by Abdel-Karim who repeatedly stated that, without influence from Fletcher, she was "150 percent" sure that Caldwell was the perpetrator. In a suppression hearing, "we defer to the trial court's determination on the credibility of witnesses."[34]

---

[27] *Anthony v. State*, 236 Ga. App. 257, 259 (511 SE2d 612) (1999).

[28] *Turner v. State*, 235 Ga. App. 331, 333 (508 SE2d 786) (1998).

[29] 236 Ga. App. 709 (513 SE2d 263) (1999).

[30] *Parker v. State*, 242 Ga. App. 10, 12 (2) (528 SE2d 530) (2000).

[31] *Brown v. State*, 264 Ga. 48, 49 (3) (a) (441 SE2d 235) (1994).

[32] *Barber v. State*, 236 Ga. App. 294, 295-296 (1) (512 SE2d 48) (1999).

[33] (Citation and punctuation omitted.) *Watson v. State*, 243 Ga. App. 636, 638 (c) (534 SE2d 93) (2000).

[34] *Bellamy v. State*, 243 Ga. App. 575, 577 (1) (b) (530 SE2d 243) (2000).

6. Caldwell's cross-examination of State's witness Sandra Gates eliciting the same testimony which he now claims was inadmissible on redirect waives any enumeration of error with regard to that testimony. "A party will not be heard to complain of error induced by his own conduct."[35]

7. Those claims of error not contained in Caldwell's "Argument and Citation of Authority" are deemed abandoned.[36]

*Judgment affirmed. Johnson, C. J., Pope, P. J., and Blackburn, P. J., concur. Smith, P. J., concurs specially. Barnes and Phipps, JJ., dissent.*

SMITH, Presiding Judge, concurring specially.

I write specially because, although I agree with the conclusion of the majority and its affirmance of the judgment, I cannot agree with all that is said in the opinion.

After the Supreme Court's holding in *Paul v. State*, 272 Ga. 845 (537 SE2d 58) (2000), we must decide whether an alleged violation of OCGA § 17-8-57 was "plain error" and therefore no waiver occurred even if no objection was made. In this case, I cannot conclude that the judicial comment rose to the level illustrated by that in *Paul*, and I agree with the majority that the defense waived its right to complain on appeal when it did not renew its objection after the curative instruction.

BARNES, Judge, dissenting.

Because I find the trial court violated OCGA § 17-8-57 by improperly commenting on the evidence, I must respectfully dissent.

1. OCGA § 17-8-57 prohibits the trial judge from expressing or intimating his opinion as to what has or has not been proved or as to the guilt of the accused. Nevertheless, the trial court told the jury: "The evidence in this case was [that] the witness was asked did you conspire with another person, weren't you the one behind all of this. The answer to that question was, no. And until evidence is produced to change your opinion about that, the evidence is no." Because this statement unequivocally expresses the trial court's opinion "as to what has or has not been proved," Caldwell's conviction must be reversed pursuant to OCGA § 17-8-57 and the case remanded for a new trial. *Ray v. State*, 181 Ga. App. 42, 44 (3) (351 SE2d 490) (1986).

This is not a case in which the trial court merely repeated the testimony of a witness. Here, the trial court told the jury the effect of the testimony was to deny what Caldwell was trying to establish and

---

[35] (Citations and punctuation omitted.) *State v. Barnes*, 222 Ga. App. 875, 877 (476 SE2d 646) (1996).

[36] Court of Appeals Rule 27 (c) (2).

that until evidence to the contrary was introduced they were bound by the evidence that "the answer is no." This goes beyond saying that there was testimony on this point, and by telling the jury that they were bound by that evidence, the trial court violated OCGA § 17-8-57.

Although the majority contends the court's "curative" instruction sufficiently remedies this error, this argument misses the point of the curative instruction. The trial court's statement that, "[i]n no way did I intend to tell you that you had to believe what any witness said was true" neither modifies nor corrects the earlier violation of OCGA § 17-8-57. The trial court's earlier instruction told the jury that the evidence "was no. And until evidence is produced to change your opinion about that, the evidence is no." Therefore, the later instruction was not sufficient to correct the initial error.

Further, the discussion whether the trial court's comment on the evidence constituted plain error is unnecessary. Caldwell properly and promptly objected to the trial court's violation of OCGA § 17-8-57 when it occurred:

> Your honor I have an objection to the instructions that you gave the jury in that I feel that the instructions that you gave the jury was or does have a — taint Mr. Caldwell's defense in that you have tried to explain a witness' testimony. The jury is supposed to decide the credibility of the witness and each witness that takes the stand. They are the ones that are supposed to decide. You have inferred that I did something unethical to the jury in your instructions in defense of Mr. Caldwell, which obviously makes it impossible for them to render a fair and impartial verdict; so, therefore, I would ask for a mistrial, that he cannot [get] a fair and impartial verdict based upon your instructions.

This objection was sufficient. Either an objection or a motion for a mistrial will preserve the issue for appellate review. *State v. Griffin*, 240 Ga. 470 (241 SE2d 230) (1978). Therefore, Caldwell did not waive the OCGA § 17-8-57 issue by failing to object again after the trial court's later instructions. By requiring that Caldwell both object *and* move for a mistrial the majority is imposing a burden on Caldwell that does not exist in our law. Even assuming failing to object after the curative instruction waived the mistrial issue, such a failure does not waive the OCGA § 17-8-57 violation issue.

2. Therefore, as I find that the trial court violated OCGA § 17-8-57, I would reverse Caldwell's conviction and order a new trial.

Should any judge violate this Code section, the violation

*shall* be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

(Emphasis supplied.) OCGA § 17-8-57.

Accordingly, I must respectfully dissent.

I am authorized to state that Judge Phipps joins in this dissent.

DECIDED NOVEMBER 20, 2000 —
RECONSIDERATION DENIED DECEMBER 8, 2000.

*Angela B. Clarke, Steven E. Phillips*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Elizabeth A. Baker*, Assistant District Attorney, for appellee.