## A02A0989. BARGE v. THE STATE.
### (568 SE2d 841)

BLACKBURN, Chief Judge.

Following a jury trial, Stanley Barge was found guilty but mentally ill of aggravated battery, carrying a concealed weapon, obstruction of a police officer, and two counts of aggravated assault. Barge appeals, contending: (1) the trial court erred by allowing the State to ask the defendant's expert witness what effect Barge's brother's criminal record would have on his diagnosis of Barge's mental condition; (2) the verdict was erroneous because Barge proved that he was legally insane; (3) the trial court erred by providing an instruction to the jury as to when using force is not justified; (4) it was error for the trial court to repeat, sua sponte, the definitions of aggravated assault, obstruction of an officer, and aggravated battery in its charge to the jury; (5) it was error for the trial court to refuse to grant a mistrial or give curative instructions relating to testimony about Barge's competency to stand trial; and (6) trial counsel was ineffective because of her failure to request a mistrial or request curative instructions concerning the testimony related to Barge's competency to stand trial. We affirm.

On appeal from a criminal conviction, the appellant no longer enjoys the presumption of innocence. The evidence is viewed in the light most favorable to the verdict under the standard of *Jackson v. Virginia*.[1] See *Robinson v. State*.[2] So viewed, the record shows that, on June 29, 1999, Stanley Barge approached the counter of the Shake & Burger in the food court at Avondale Mall. Cursing, Barge

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Robinson v. State*, 246 Ga. App. 576 (1) (541 SE2d 660) (2000).

demanded a hamburger and was told that the restaurant was closed. Moments later, Barge returned to the counter, grabbed the owner's hand, demanded money, and pulled back his jacket to reveal a handgun. The restaurant owner jumped over the counter and began to run. Barge opened fire, hitting the victim twice. Shortly thereafter, Barge pointed his gun at a mall security guard, who fired his own gun and instructed Barge to put his gun down. Barge eventually complied and was restrained by the security guard.

At trial, Barge asserted a defense of insanity. The jury, however, rejected this defense and found Barge guilty but mentally ill.

1. Barge contends that Dr. Owens, the defendant's expert on his mental condition, should not have been allowed to testify, over an objection, as to what effect knowledge of Sidney Barge's (Stanley's brother) criminal convictions would have had on Dr. Owens' diagnosis of Stanley Barge. Barge alleges the State used erroneously admitted impeachment evidence to attack the credibility and conclusions of Barge's expert witness. Barge contends the impeachment evidence was improper because not all of the crimes were crimes of moral turpitude, and, therefore, not admissible for impeachment purposes, and the simple battery charge had not been properly proved by a certified copy of the conviction.[3]

During cross-examination, Sidney Barge admitted to convictions of three counts of armed robbery, two counts of felony shoplifting, a felony count of receiving stolen property, and misdemeanor counts of fleeing an officer and obstruction of an officer. Certified copies of the convictions were admitted over an objection to admission of the entirety of the copies.

"[C]rimes involving moral turpitude are restricted to the gravest offenses, consisting of felonies, infamous crimes, and those that are malum in se and disclose a depraved mind." (Punctuation omitted.) *Polk v. State.*[4] The misdemeanors, fleeing an officer and obstruction of an officer, do not fit within the definition of crimes of moral turpitude, and simple assault is not such a crime. Id. Even if simple assault had been a crime of moral turpitude, a certified copy of the conviction was not admitted into evidence as was done for the other crimes used to impeach the testimony of Sidney Barge. *Sapp v. State.*[5]

Although Barge made an objection to the expert's explanation of the effect of the obstruction and assault (battery) charges on his eval-

---

[3] The record actually shows that it was a simple assault charge rather than a battery charge that was not included in the certified copies of sentences admitted into evidence and acknowledged by Sidney Barge in his testimony.

[4] *Polk v. State*, 202 Ga. App. 738, 739 (2) (415 SE2d 506) (1992).

[5] *Sapp v. State*, 271 Ga. 446, 448 (2) (520 SE2d 462) (1999).

uation of Stanley Barge, there is no indication in the record as to the grounds for these objections. "In order to raise on appeal contentions concerning admissibility of evidence the specific ground of objection must be made at the time the evidence is offered, and a failure to do so will be considered as a waiver. All evidence is admitted as a matter of course unless a valid ground of objection is interposed." *Caldwell v. State.*[6]

Furthermore, even though admission of the misdemeanor convictions was error, it was harmless. The evidence of the felony convictions was properly introduced, and, therefore, it is likely the effect on the expert's evaluation of Stanley Barge would not have been altered significantly if the misdemeanor charges were excluded. In fact, Dr. Owens testified that even if all of Sidney Barge's statements about his brother were eliminated from consideration, it would not have had a major impact on his opinion of Stanley Barge's mental condition.

2. Barge contends the verdict of guilty but mentally ill was erroneous because he had proved insanity by a preponderance of the evidence. Insanity is an affirmative defense, and, therefore, "[t]he appropriate standard of appellate review is whether the evidence, when construed most favorably for the State, would be sufficient to authorize a rational trier of fact to find that appellant failed to prove by a preponderance of the evidence that [Barge] was insane at the time of the crimes." (Punctuation omitted.) *Lawrence v. State.*[7]

Under Georgia law, the jury is entitled to presume an individual is sane unless such presumption is rebutted. OCGA § 16-2-3. "Jurors are not bound by the opinions of either lay witnesses or expert witnesses as to the question of sanity and they may rely on the basic presumption existing under our law. The jury is free to reject expert testimony as to sanity and may find an accused sane even without positive testimony as to sanity." (Punctuation omitted.) *Wilson v. State.*[8]

On the other hand, juries may not rely solely on the rebuttable presumption of sanity, when the proof of insanity is overwhelming. *Keener v. State.*[9] To support a finding that Barge is not guilty of a criminal act, his defense must show: "(1) that [Barge] was laboring under a delusion; (2) that the criminal act was connected with the delusion under which [Barge] was laboring; and (3) that the delusion

---

[6] *Caldwell v. State*, 247 Ga. App. 191, 198 (3) (542 SE2d 564) (2000).
[7] *Lawrence v. State*, 265 Ga. 310, 311 (1) (454 SE2d 446) (1995).
[8] *Wilson v. State*, 257 Ga. 444, 449 (11) (d) (359 SE2d 891) (1987).
[9] *Keener v. State*, 254 Ga. 699, 701 (1) (334 SE2d 175) (1985).

was as to a fact which, if true, would have justified the act." *Stevens v. State.*[10]

In the present case, the State presented evidence that Barge was arguing with the victim prior to the shooting, carried a concealed gun, demanded money, and came to the mall even though God told him that someone was going to hurt him. There was also testimony that, after the shooting, Barge hid behind a pillar and pointed his gun at the security guard, followed orders to lie down and throw the gun out, and calmly told the security guard the caliber of his gun. Testimony from the police officer interviewing Barge after the incident indicated Barge understood his *Miranda* rights, and he was acting angry and hostile rather than crazy. The State also attacked the credibility of Sidney Barge's testimony about his brother's unusual behavior before the incident by introducing evidence that he had been convicted of a number of felony crimes. A recording of Barge's interview with the police after the incident was viewed by the jury.

Testimony given by the State's expert, a forensic psychiatrist, was that Barge's statement to the police was coherent, and that while he was in the state hospital after the incident, he displayed no psychotic behavior and was not under medication. In an interview at the hospital with this psychiatrist, Barge denied hearing voices and having any special connection to God. It was the expert's opinion that on the day of the incident, Barge could distinguish right from wrong, that if he had delusions, there was no compulsion to act, and, in fact, if he had a premonition that the event would happen, he would have sought to avoid it. Dr. Sachy also testified that there was conflicting information about Barge's substance abuse history, and that his behavior immediately before and during the incident was consistent with a substance-induced psychosis. In the interview with the expert, Barge told Dr. Sachy that he knew the crimes were wrong and tried to justify them.

The defense presented testimony by Barge's great-uncle and Sidney that his behavior had not been normal for about a year and a half, since an accident in which his wife and son were injured. His great-uncle testified that Stanley Barge talked to dead relatives and told his great-uncle that his wife and son were devils. Sidney testified that Barge burned meat saying it was for "feeding his fathers," that he stated that witches and demons were after him, and that he had talked with dead relatives; but the credibility of his testimony was impeached by the State by introduction of his criminal convictions. A former co-worker testified that, on the day of the incident, Barge had

---

[10] *Stevens v. State*, 256 Ga. 440, 442 (350 SE2d 21) (1986).

come to the work site, wanted to come back to work, was demanding and nervous, and said that witches talked to him in the night.

A number of witnesses at the mall on the day of the incident indicated that Barge was not acting normally or was acting crazy. In contrast to the State's expert, Dr. Owens testified that, on the day of the incident, Barge was suffering from a psychotic disorder, felt he was acting in self-defense, and, after the shooting, did not think he had done anything wrong. The defense presented evidence of either mental illness or insanity, which presented an issue for resolution by the jury. The evidence supported the jury's verdict.

Barge cites *Stevens v. State*, supra, in support of his contentions that he has carried his burden of proof of insanity, but *Stevens* is distinguishable. Unlike the present case, in *Stevens*, "[t]here was no contrary expert testimony tending to rebut the defendant's insanity defense." *McMachren v. State*.[11] Moreover, in *Stevens*, the trial court, after a bench trial, had made written findings that the first two prongs of the burden of proof had been satisfied; the defendant was laboring under a delusional compulsion which overmastered his will which caused the criminal act. The Supreme Court reversed the trial court only on the third prong of the burden of proof that the evidence demanded a finding that the delusion, if true, would have justified the act.

Unlike *Stevens*, Barge was convicted by a jury which determined all three prongs from the evidence presented. The trial court did not abuse its discretion in refusing to grant a new trial.

3. Barge contends that it was error for the trial court to give an instruction to the jury about when using force is not justified. Defense counsel tendered the pattern jury instruction on the use of force in its entirety to the trial court, and, therefore, Barge cannot complain about a charge which he requested. *Smith v. State*.[12] Furthermore, Barge erroneously asserts that there was no evidence upon which to base this charge. Here, the victim testified that prior to the shooting, Barge was cursing and yelling when he came to the counter, grabbed him by his shirt while displaying a gun, and demanded money.

4. Barge asserts that the trial court erred in repeating the jury charges defining aggravated assault, aggravated battery, and obstruction of an officer because this repetition provided undue emphasis that resulted in an unfair statement of law in relation to the defendant's rights. "Mere repetition of a correct and applicable principle of law is not such error as requires reversal unless it takes

---

[11] *McMachren v. State*, 187 Ga. App. 793, 794 (1) (371 SE2d 445) (1988).
[12] *Smith v. State*, 267 Ga. 372, 375 (4) (477 SE2d 827) (1996).

color of an argumentative or opinionative utterance so as to tend to prejudice the minds of the jury." (Punctuation omitted.) *Grier v. State*.[13]

In *Key v. State*,[14] this Court found that repetition of the charges related to the definition of aggravated assault and transfer of intent was not grounds for reversal. Here, the trial judge repeated the definition of three of the crimes with which Barge was charged immediately after stating it the first time. Merely restating the definition of the crimes charged did not, taking the charge as a whole, so unduly emphasize the State's case as to result in an unfair statement of the law tending to prejudice the minds of the jury. Id. Therefore, this argument is without merit.

5. Barge asserts that a reference by the State's expert to the earlier proceeding to determine Barge's competency to stand trial was so prejudicial that a new trial should have been granted. Barge contends that, from the psychiatrist's comment, the jury could have concluded that a hearing had already found Barge competent. The State's expert responded to the following question on direct examination, "Is there any part of Dr. Owens' report which affects your opinion in any way?" Dr. Sachy responded, "Not as far as criminal responsibility. However, when I — this is a different jury, but when I was here Monday."

The abuse of discretion standard is applied in reviewing the trial court's ruling on a motion for new trial. *McIntosh v. State*.[15] The trial court's discretion will not be overturned when "the cause of the motion lies in the voluntary remark of a witness not invited by the court or counsel, and, where the jury is properly instructed and the remark is not so flagrantly prejudicial as to violate the fair trial rights of the defendant." *Owens v. State*.[16]

The voluntary and nonresponsive answer did not directly identify the hearing, its content, or result. The trial court instructed the witness to say nothing further concerning the Monday proceeding and, upon the jurors' return to the courtroom, instructed them to disregard the response. Under these circumstances, we cannot say that Dr. Sachy's remark was so flagrantly prejudicial as to violate the fair trial rights of the defendant. Moreover, defense counsel did not renew the objection after the curative instruction. *Caldwell v. State*.[17]

6. Barge asserts that the trial court erred in, sua sponte, failing to give a curative instruction after the State, on cross-examination,

---

[13] *Grier v. State*, 273 Ga. 363, 366 (4) (541 SE2d 369) (2001).
[14] *Key v. State*, 226 Ga. App. 240, 242 (1) (485 SE2d 804) (1997).
[15] *McIntosh v. State*, 247 Ga. App. 640, 643 (3) (545 SE2d 61) (2001).
[16] *Owens v. State*, 250 Ga. App. 61-62 (550 SE2d 464) (2001).
[17] *Caldwell v. State*, 247 Ga. App. 191, 197 (1) (c) (542 SE2d 564) (2000).

asked defendant's expert, "Now, in your opinion, he's not competent to even stand trial, is he?" He also asserts that defense counsel's failure to request a mistrial, at the time that question was asked, constitutes ineffective assistance of counsel.

(a) Barge argues permitting this question allows introduction of irrelevant material which is prejudicial to the defendant. In *Hudson v. State*,[18] the Supreme Court held that inquiry into "an accused's competency to stand trial is a totally different inquiry than inquiry into insanity at the time of the criminal act." (Punctuation omitted.) Id. at 127 (4). Without a specific showing of relevancy, evidence relating to competency to stand trial is not admissible during the inquiry into insanity at the trial for the criminal act. Id.

Here, after the bench conference on this objection, which was not included in the record, the State asked another question, and, unlike the witness in *Hudson*, the witness never answered the question on incompetency. "In no case will the trial judge's ruling be reversed for not going further than requested. After his objection, [Barge] neither moved for a mistrial nor requested curative instructions." *Zellner v. State*.[19] Therefore, in these circumstances, we do not find that there was an abuse of discretion by the trial court in refusing to grant a mistrial for its failure, sua sponte, to give curative instructions.

(b)

> To be successful with (his) claims of ineffectiveness of trial counsel, [Barge] must demonstrate that (his) attorney's performance was deficient and that the deficiency prejudiced (his) defense. (He) must overcome the strong presumption that counsel's performance was within a wide range of professional conduct and that counsel's decisions were the result of reasonable professional judgment, the reasonableness of which is viewed at the time of trial and under the particular circumstances of the case.

*Anderson v. State*.[20]

Defense counsel did object to introduction of the evidence concerning Barge's competency trial. At the hearing on the motion for new trial, defense counsel testified that she did not move for a new trial because the judge sustained her objection and did not let the doctor answer the question. She also stated that it was her experience that jurors did not understand the competency issue, and com-

---

[18] *Hudson v. State*, 273 Ga. 124 (538 SE2d 751) (2000).

[19] *Zellner v. State*, 260 Ga. 749, 751 (3) (b) (399 SE2d 206) (1991).

[20] *Anderson v. State*, 237 Ga. App. 382, 383-384 (2) (515 SE2d 195) (1999).

petency would have to be explained over and over for them to understand. Furthermore, defense counsel testified that when Dr. Sachy, the State's expert, made a reference to the incompetency trial, she had objected and moved for a mistrial. "Trial strategy and tactics do not equate with ineffective assistance of counsel. . . . A trial court's finding that a defendant has been afforded effective assistance of counsel will not be disturbed on appeal unless clearly erroneous." (Punctuation omitted.) *Coney v. State*.[21] Under the circumstances above, we do not find that defense counsel's conduct fell outside the range of reasonable professional conduct, and we are unable to find the trial court's ruling on this matter clearly erroneous in the instant case.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JULY 16, 2002.

*Maria Murcier-Ashley*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, James M. McDaniel, Jeanne M. Canavan, Assistant District Attorneys*, for appellee.

---

[21] *Coney v. State*, 209 Ga. App. 9, 11 (1) (432 SE2d 812) (1993).