**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2016**

# In the Court of Appeals of Georgia

A16A0674. SUMMERLIN v. THE STATE.

RAY, Judge.

A Cobb County jury found Candida Summerlin guilty but mentally ill on two counts of criminal attempt to commit malice murder, two counts of criminal attempt to commit felony murder, two counts of aggravated assault on a peace officer, two counts of hit and run, two counts of criminal damage to property in the first degree, and one count each of aggravated battery, fleeing or attempting to elude a police officer, and interference with government property.[1] Summerlin appeals from her convictions and the denial of her motion for new trial, contending that: (1) the verdict was erroneous because she proved her insanity defense; (2) the trial court erred in

---

[1] The criminal attempt to commit felony murder charges, aggravated assault charges, and aggravated battery charge were merged with the two counts of criminal attempt to commit malice murder.

denying her motion for new trial based on newly discovered evidence; (3) the trial court erred in denying her motion for directed verdict on the criminal attempt to commit felony murder charges; (4) the trial court erred in charging the jury; and (5) the trial court erred in allowing certain hearsay testimony. For the following reasons, we affirm.

Viewed in the light most favorable to support the verdict,[2] the evidence presented at trial showed that on May 31, 2013, Summerlin drove to the work-release facility at the Cobb County detention center. She parked in front of the building in an area normally reserved for Sheriff's Office vehicles, playing her radio loudly. Lieutenant Westenberger approached Summerlin and told her that she had parked in a restricted area and that she needed to move her vehicle to a different area of the parking lot. Summerlin responded to Lieutenant Westenberger in an angry tone, and she glared at the officer as she was putting on her seatbelt. As Lieutenant Westenberger was walking away from the vehicle, Summerlin revved up her engine and accelerated toward the officer, striking her with the front of the vehicle. Sergeant Kite observed Lieutenant Westenberger as she was rolling off the top of the moving vehicle, and he ran out of the building and tried to stop Summerlin. Summerlin then

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

accelerated and veered her vehicle toward Sergeant Kite, striking him as well. When Summerlin's vehicle hit a nearby curb and a signpost, disabling her vehicle, Sergeant Kite approached the vehicle and placed Summerlin under arrest. The jury found Summerlin guilty but mentally ill of all counts charged in the indictment.

1. We first address Summerlin's enumeration of error relating to the admission of certain statements made by Summerlin during telephone conversations while in custody at the Cobb County Jail. Summerlin contends that the statements were irrelevant, unreliable, and prejudicial hearsay, and that the admission of the statements violated her right to confrontation. We disagree.

The first of these telephone calls occurred on May 26, 2013, just five days prior to the criminal conduct at issue in this case, when Summerlin was under arrest for another incident. Although this telephone call had been recorded by the jail and later listened to by the officer assigned to investigate the instant case, the officer was unable to copy the audio to a CD due to a change in the jail's phone system. After the trial court provided the jury with the appropriate limiting instructions, the officer was permitted to testify as to Summerlin's statements, using his investigative notes. The officer testified that Summerlin had stated on the phone: "I know the bitch ass that just locked me up is about to get it, tell you that."

3

The two other telephone calls occurred on June 15 and June 17, 2013, after Summerlin was arrested for the charges in this case. The investigating officer was able to download a copy of the audio of the latter telephone calls onto a CD, which was played for the jury. In the June 2013 telephone calls, Summerlin complained of previous harassment by Cobb County law enforcement officers and that one of the deputies she hit with her car "tried to shoot at me so I ran the bitch over."

In Georgia, hearsay is generally not allowed as evidence and is defined as "a statement, other than the one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA 24-8-801 (c). However, statements made by the opposing party are deemed admissions which are not excluded by the rule. OCGA 24-8-801 (d) (2) (A). Additionally,

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA 24-4-404 (b).

Summerlin's statement in the May 26, 2013, telephone call relates to a prior wrong or act which would generally be irrelevant character evidence. However, since

Summerlin asserted an insanity defense, her state of mind at the time of the conduct was highly relevant. This particular telephone call occurred five days before the criminal conduct at issue in this case, and her statement indicates her disdain for law enforcement intervention and a desire to seek revenge. Therefore, this statement is relevant to show her motive and intent in committing the crimes in this case. Additionally, the trial court instructed the jury not to use this evidence as proof of the prior wrong and to only consider it to the extent it shows Summerlin's intent or motive in committing the alleged crimes in the case before them. Finally, Summerlin had the opportunity to cross-examine the investigating officer in an attempt to show that his memory of the phone conversation was not credible. Therefore, this evidence was properly admitted by the trial court.

As for the June 2013 telephone calls, Summerlin contends that the statements made by the person to whom she was speaking constituted inadmissible hearsay. She argues that without the hearsay the telephone conversation would be incomplete, which would allow Summerlin's statements to be taken out of context. However, Summerlin's statements speak for themselves. The statement "she tried to shoot at me so I ran the bitch over" shows a willingness to use a motor vehicle as a weapon or a means of attack against another person, even without the other person's response.

Thus, this evidence is relevant to Summerlin's motive and intent at the time of the incident and her propensity to use a motor vehicle to strike another person. It also was an admission. Therefore, her objection was properly overruled and the trial court did not error in admitting this evidence.

2. Summerlin argues that the guilty but mentally ill verdict is erroneous because she established her insanity defense by a preponderance of the evidence and that the State failed to disprove that defense beyond a reasonable doubt. We disagree.

> Under Georgia law, a person is insane, and shall not be guilty of a crime, if at the time of the act . . . constituting the crime, the person did not have [the] mental capacity to distinguish between right and wrong in relation to the criminal act or acted because of a delusional compulsion which overmastered [her] will to resist committing the crime. A defendant claiming insanity has the burden of proving the defense by a preponderance of the evidence. Because Georgia law presumes every person is of sound mind and discretion, criminal trials begin with the rebuttable presumption that the defendant is sane[,] and this presumption is evidence. Where the defense presents evidence in support of a defense of insanity, a jury is authorized to reject such evidence. On appeal, [the standard of review is] whether, viewing the evidence in the light most favorable to the verdicts, a rational trier of fact could have found that [Summerlin] failed to prove by a preponderance of the evidence that [she] was insane at the time of the crimes, and whether the State met its

6

burden of proving [she] was guilty, but mentally ill, beyond a reasonable doubt.

(Citations omitted.) *Norred v. State*, 297 Ga. 234, 235-236 (773 SE2d 234) (2015). Although jurors are entitled to reject expert testimony on the question of sanity, the jury "may not rely solely on the rebuttable presumption of sanity[] when the proof of insanity is overwhelming." (Citation and footnote omitted.) *Barge v. State*, 256 Ga. App. 560, 562 (2) (568 SE2d 841) (2002).

At trial, Summerlin presented evidence and expert testimony concerning her prior mental health and her state of mind on the day of the incident. Her evidence showed that she had a history of mental health issues. Summerlin's expert, Dr. Matthew Norman, testified that he diagnosed Summerlin as having a bi-polar disorder with manic and psychotic features. Dr. Norman further testified that, in his opinion, Summerlin was experiencing a manic episode with hallucinations and delusions at the time of the incident. The State responded with expert testimony which showed that bi-polar disorders are extremely common diagnoses and that most people with bi-polar disorders could still distinguish right from wrong. Additionally, the State's psychiatric experts testified that they evaluated Summerlin and diagnosed her as having "malingered hallucinations," meaning that she either fabricated her

7

hallucinations and delusions or exaggerated them to achieve a secondary purpose. Having heard all of the evidence and testimony, including the statements made by Summerlin indicating her disdain for law enforcement intervention and her penchant for seeking revenge, the jury rejected Summerlin's defense of insanity and instead found her guilty but mentally ill.

Summerlin argues that her conduct was so inexplicable that her actions alone were sufficient to meet her burden of proof as to insanity. In support of her argument, Summerlin cites *Brown v. State*, 228 Ga. 215 (184 SE2d 655) (1971), a case in which our Supreme Court held that the trial court erred in rejecting the defendant's requested jury instruction that "the act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a disease[d] mind." (Punctuation omitted.) Id. at 219-220 (3). However, Summerlin does not assert that she requested a similar jury instruction in this case. Rather, she seeks to use this principle of law to override the jury's rejection of her insanity defense, contending that the evidence was so overwhelmingly in favor of a finding of insanity that no reasonable trier of fact could have found otherwise. We cannot agree.

Based on the evidence presented at trial, the jury was authorized to reject Summerlin's insanity defense and instead rely upon the presumption of sanity and the

expert witness testimony indicating that most people with bi-polar disorders understand the difference between right and wrong and that Summerlin had either fabricated or exaggerated her symptoms regarding her mental health to achieve a secondary purpose. The State's case was buttressed by the evidence that Summerlin had a disdain for law enforcement intervention and a penchant for seeking revenge. Therefore, the evidence presented to the jury did not overwhelmingly show Summerlin was insane at the time of her crimes. As the State had met its burden of disproving her insanity defense, the jury was authorized to return a verdict of guilty but mentally ill.

3. Summerlin next argues that the trial court erred in denying her motion for new trial based on newly discovered evidence. We disagree.

Following trial and the subsequent sentencing hearing, defense counsel obtained probate court records relating to a petition for guardianship filed by Summerlin's parents. Among those records was a psychological evaluation report prepared by a psychologist who had been appointed by the probate court. The psychologist reported that Summerlin suffered from mental illness that affected her ability to make responsible decisions, and he opined that Summerlin was in a

9

psychotic state at the time of her criminal conduct at issue in the present case. Summerlin argues that this newly discovered evidence warrants a new trial.

For a new trial to be granted on the basis of newly discovered evidence, however, Summerlin must satisfy all of the following requirements:

> (1) the evidence at issue came to [her] knowledge since [her] trial; (2) it was not owing to the want of due diligence that [she] did not acquire it sooner; (3) such evidence is so material that it would probably produce a different verdict; (4) the evidence is not merely cumulative; (5) the affidavit of the witness [himself] should be procured or its absence accounted for; and (6) the effect of the evidence would be more than to merely impeach the credibility of a witness.

(Citation omitted.) *State v. Hill*, 295 Ga. 716, 720 (763 SE2d 675) (2014).

Although the psychologist's report at issue here is relevant to show Summerlin's mental capacity at the time of the crimes, this evidence is cumulative of the evidence that she presented at trial. In Georgia,

> [t]he true test as to whether evidence is cumulative depends not only on whether it tends to establish the same fact, but it may depend on whether the new evidence is of the same or different grade. It is only when newly discovered evidence either relates to a particular material issue concerning which no witness has previously testified, or is of a higher

and different grade from that previously had on the same material point, that it will ordinarily be taken outside the definition of cumulative evidence.

(Citation omitted.) *Brown v. State*, 264 Ga. 803, 806 (3) (450 SE2d 821) (1994).

At trial, the defense presented expert testimony concerning Summerlin's mental health at the time of her criminal conduct. Allowing further testimony of the same grade on this issue would be merely cumulative. Furthermore, since the jury had previously rejected similar evidence, the admission of additional evidence on the same material issue was not likely to produce a different verdict. Therefore, the trial court did not err in denying Summerlin's motion for new trial on the basis of newly discovered evidence.

4. Next, Summerlin contends that the trial court erred in denying her motion for a directed verdict on the two criminal attempt to commit felony murder charges. Summerlin argues that attempt to commit felony murder is not a crime in Georgia and the inclusion of the charges created a prejudicial effect on the jury's consideration of the other counts in the indictment. We discern no reversible error.

The felony murder statute provides that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another

11

human being irrespective of malice." OCGA § 16-5-1 (c). "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. However, there does not appear to be any case law in Georgia on whether an *attempt* to commit felony murder is a recognized crime. We note that other jurisdictions have ruled on this issue, and

> [t]he majority of jurisdictions which have considered the question have concluded that attempted felony murder is not a crime. . . . [T]he offense of attempt requires an intent to commit a specific offense, while . . . felony murder . . . does not involve an intention to kill. There is no such criminal offense as an attempt to achieve an unintended result.

(Citations and punctuation omitted.) *Bruce v. State*, 317 Md. 642, 646-647 (IV) (566 A2d 103) (1989). While this logic appears to be sound, we need not decide this issue here.[3]

---

[3] Likewise, we need not address the parties' dispute as to whether Summerlin's motion for directed verdict should be treated as a general demurrer to the indictment, which can be asserted at any time, or as a special demurrer to the indictment, which would be untimely at trial. See *Kain v. State*, 287 Ga. App. 45, 48 (2) (650 SE2d 749) (2007) (addressing the differences between a special demurrer and a general demurrer).

12

Although the jury returned a verdict of guilty but mentally ill on the two criminal attempt to commit felony murder counts, the trial court merged these two offenses with the two criminal attempt to commit malice murder convictions. The trial court then sentenced Summerlin on the attempt to commit malice murder convictions, but not on the attempt to commit felony murder counts. Where a defendant is found guilty on alternative counts of malice murder and felony murder and the trial court enters a judgment of conviction and sentence only on the malice murder count, "any issue concerning the felony murder count is moot[.]" (Citations and punctuation omitted.) *Roberts v. State*, 276 Ga 258, 260 (5) (577 SE2d 580) (2003). Here, the "merged" convictions for criminal attempt to commit felony murder were vacated as a matter of law and fact. See *Mason v. State*, 279 Ga. 636, 639 (3) (619 SE2d 621) (2005).

Furthermore, assuming without deciding that attempt to commit felony murder is not a recognized crime in Georgia, we find that the evidence supporting her other convictions was overwhelming.[4] Therefore, the inclusion of the attempt to commit

---

[4] We note that Summerlin does not challenge the sufficiency of the evidence with regard to her other convictions.

felony murder counts, even if erroneous, would not have prejudiced the jury's consideration of guilt as to the other counts in the indictment.

For the above reasons, we find that the trial court's denial of the motion for directed verdict on the attempt to commit felony murder counts was of no consequence to Summerlin.

5. Lastly, Summerlin contends the trial court erred in charging the jury. Specifically, she argues that the trial court failed to instruct the jury that the offense of felony murder does not require malice or an intent to kill; the trial court gave charges applicable to the crime of murder when no death had occurred; and the trial court failed to charge that the treatment for a defendant found guilty but mentally ill is dependant on the availability of funds. We find no reversible error.

(a) As a part of its charge on criminal attempt to commit felony murder, the trial court instructed the jury that "a person commits the crime of felony murder when in the commission of a felony that person causes the death of another human being." Summerlin later objected to this jury instruction because it failed to include the "irrespective of malice" element of the offense.[5] The trial court declined to re-instruct

---

[5] OCGA § 16-5-1 (c) provides that "[a] person commits the offense of [felony] murder when, in the commission of a felony, he or she causes the death of another human being *irrespective of malice*." (Emphasis supplied).

14

the jury on this point, reasoning that the failure to include the "irrespective of malice" element of felony murder in the charge "would be an error in the defense's favor[.]" On appeal, Summerlin contends that the incomplete instruction likely misled the jury and permitted the jury to convict her on an erroneous legal theory.[6] However, Summerlin's convictions for criminal attempt to commit felony murder stand vacated as a matter of law and, thus, any asserted error with regard to the jury instruction on felony murder is of no consequence to Summerlin. See *Mason*, supra (where defendant's "merged" felony murder and aggravated assault convictions stood vacated by operation of law and fact, any complaint as to the jury instructions on those charges was moot).

(b) After charging the jury on criminal attempt to commit malice murder, the trial court gave additional instructions applicable to the offense of malice murder. Summerlin objected to the instructions applicable to murder, pointing out that no homicide had occurred in this case. The trial court declined to add to or delete from the charge as given, explaining that it merely defined the offense of murder and followed the pattern charge for that offense. On appeal, Summerlin argues that the

---

[6] Summerlin points out that the offense of malice murder requires intent, whereas the offense of felony murder does not.

15

instructions applicable to murder were not authorized by the evidence, were highly prejudicial, and likely confused or misled the jury.

In the present case, it is undisputed that no death resulted from Summerlin's actions and that she was not charged with murder. However, since Summerlin was charged with criminal attempt to commit malice murder, it follows that the trial court would explain to the jury the elements and requirements of the crime which she was accused of attempting. See generally *Johnson v. State*, 187 Ga. App. 803, 804 (3) (371 SE2d 419) (1988) (holding that a charge on criminal attempt to commit aggravated sodomy and rape was sufficient where trial court fully instructed the jury on the elements of aggravated sodomy and rape, thereby providing the jury with guidance in determining whether defendant was guilty of attempting to commit these crimes).

Here, there is no likelihood that the jury was misled by the inclusion of the instructions applicable to murder because the evidence was clear that no death occurred. Furthermore, the instructions did not prejudice the jury because the instructions provided the jury with guidance in determining the issue of Summerlin's guilt by defining the elements and requirements of the crime for which she was accused of attempting. "The charge to the jury is to be taken as a whole and not out

16

of context when making determinations as to the correctness of same." (Citations and punctuation omitted.) Id. We find no error.

(c) Summerlin contends that the trial court erred in its jury charge by failing to instruct the jury that, if a defendant is found guilty but mentally ill, the defendant's treatment is dependent upon availability of State funds. Summerlin argues that this information is required by OCGA § 17-7-131 (b) (3). We disagree.

OCGA § 17-7-131 (b) (3) provides, in pertinent part, that

[i]n all cases in which the defense of insanity is interposed, the trial judge shall charge the jury, in addition to other appropriate charges, the following: . . . (B) I charge you that should you find the defendant guilty but mentally ill at the time of the crime, the defendant will be placed in the custody of the Department of Corrections which will have responsibility for the evaluation and treatment of the mental health needs of the defendant, which may include, at the discretion of the Department of Corrections, referral for temporary hospitalization at a facility operated by the Department of Behavioral Health and Developmental Disabilities.

Although the trial court's charge complied with OCGA § 17-7-131 (b) (3) (B) in all respects, Summerlin contends that a portion of the language in OCGA § 17-7-131 (g) (1) should have also been included in the charge. This subsection states that

17

> [w]henever a defendant is found guilty but mentally ill at the time of a felony . . . the court shall sentence him or her in the same manner as a defendant found guilty of the offense[.] . . . *A defendant who is found guilty but mentally ill at the time of a felony . . . shall be committed to an appropriate penal facility and shall be evaluated then treated, if indicated, within the limits of state funds appropriated therefore, in such manner as is psychiatrically indicated for his or her mental illness*[.]

(Emphasis supplied.)

However, the provisions of OCGA § 17-7-131 (g) (1) merely specify the respective obligations of the trial court and the penal facility following a conviction based on a verdict of guilty but mentally ill. Summerlin provides no authority to support her assertion that the trial court was obligated to instruct the jury that any required treatment would be dependent upon availability of State funding. As the trial court gave the applicable jury charges required by OCGA § 17-7-131 (b) (3), as well as other appropriate jury charges for this criminal case, we find no error.

*Judgment affirmed. Doyle, C. J., and Andrews, P. J., concur.*

18