300 Ga. 598
FINAL COPY

S16A1667.  HARVEY v. THE STATE.

HINES, Chief Justice.

Appellant Kajul Tawice Harvey was convicted of malice murder, burglary and other crimes in connection with the death of her mother, Alena Marie Marble.[1]  She appeals, asserting, inter alia, the evidence of guilt was insufficient, and her trial counsel was ineffective.  We find no harmful error and affirm

---

[1] The crimes occurred on June 3, 2011.  Appellant was indicted on February 6, 2013, and charged with malice murder, ten counts of felony murder, two counts of aggravated assault, three counts of aggravated battery, kidnapping, false imprisonment, burglary, robbery, financial transaction card theft, tampering with evidence, hindering the apprehension of a criminal, and concealing the death of another.  Before trial, the prosecution dismissed one of the felony murder counts (predicated on financial transaction card theft) and the concealment of a death count.  Trial commenced on April 15, 2013; however, a mistrial was granted in the midst of defense counsel's opening statement and, before she was retried, appellant filed a plea in bar based on double jeopardy.  The trial court denied appellant's plea in bar.  Appellant appealed and this Court affirmed the denial of the plea.  See *Harvey v. State*, 296 Ga. 823 (770 SE2d 840) (2015).  In the meantime, appellant's second trial began on June 17, 2013, and ended on June 21, with a guilty verdict on all counts, except kidnapping and felony murder predicated on kidnapping.  At the sentencing hearing, which was delayed until this Court ruled on appellant's previous appeal, appellant was sentenced to life without the possibility of parole for malice murder, and concurrent terms of imprisonment for burglary, false imprisonment, robbery, tampering with evidence, financial transaction card theft, and hindering the apprehension of a criminal.  The remaining counts were merged or vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 372-373 (434 SE2d 479) (1993).  Appellant's timely filed motion for new trial was denied on December 2, 2015, and appellant filed a notice of appeal on December 8, 2015.  The case was docketed in this Court for the September 2016 term and submitted for decision on the briefs.

appellant's convictions and sentences, except for the conviction and sentence for hindering the apprehension of a criminal, which must be vacated.

1. Construed in a light to uphold the verdicts, the evidence shows the following: The victim lived in an apartment with her daughters, appellant and Nikea Harvey, as well as appellant's two children, four-year-old Zakiya and two-year-old Brian. Appellant, Zakiya, and Brian shared one of the three bedrooms in the apartment. Nikea, who is developmentally disabled, had her own bedroom. The victim, who paid the rent, used the master bedroom, which she kept locked with a padlock.

In the year and a half before her death, the victim called police to her home on two occasions when appellant let her boyfriend, Latoris Grovner,[2] into the apartment against the victim's wishes. Just days before her death, the victim confided to a neighbor that she wanted to move because she was afraid that appellant and Grovner would harm her, and she was scared for her life. Then, after she argued with appellant as to who would control the proceeds from

---

[2] Grovner and appellant were indicted together and, like appellant, Grovner was charged with malice murder and other crimes. Grovner was tried first. He was convicted of voluntary manslaughter and other crimes in connection with the victim's death.

appellant's social security check,[3] the victim confided to another neighbor that appellant said she would kill her if she did not let appellant have the check so appellant and Grovner could move in with each other.

On the night preceding the murder, appellant left the back door of the apartment unlocked so Grovner could enter even though she knew the victim would not have permitted her to do so.[4] The victim was lying on a sofa when Grovner attacked her with a metal pot,[5] a vodka bottle, and his fists. Zakiya woke up to the victim's screams and saw Grovner dragging the victim out of the apartment and putting her in the trunk of her car. Zakiya also observed that appellant, who was in bed, opened one eye, but did not go to the victim's aid. Appellant told Zakiya that she needed to leave the apartment.

The next day, appellant's older sister, Shambra Pearsall, became concerned about the victim because she had not been able to reach her. Pearsall went to the victim's apartment. Appellant let her in through the back door, but

---

[3] Appellant received a monthly SSI payment in the amount of $600 which was deposited automatically into the victim's checking account.

[4] With appellant's help, Grovner used this method of entry on other occasions when he and appellant got together in the victim's apartment.

[5] The attack was so violent that the sides of the pot were caved in.

3

she did not allow her to enter the living room. Appellant told Pearsall she did not know their mother's whereabouts, adding that she might have been with "LeRoy," their mother's friend.

Later, police officers went to the victim's apartment and knocked on the door. They continued knocking for forty minutes, until appellant opened the door. In the meantime, Grovner left the apartment undetected.

Appellant gave the victim's purse, which appeared to have blood inside, to police, who searched the apartment, finding it in disarray. There were bloodstains throughout the house, including on the sofa and floor in the living room and the bed in appellant's bedroom. Several of the victim's teeth were on the floor of the living room, a bottle of bleach was in the dining room, and bloody gloves were in a trash can. Furthermore, the lock was pried off the victim's bedroom door and her room was ransacked.[6]

Thereafter, police located the victim's automobile in a nearby parking lot. They opened the trunk and discovered the victim's body. The medical examiner determined that the victim died of blunt force injuries to the head, but that she

---

[6] The victim's car keys were kept inside her locked bedroom. At trial, appellant admitted she saw Grovner in her mother's room.

may have been alive when she was placed in the trunk.

An investigation into the use of the victim's debit card demonstrated that within several hours of the victim's murder, Grovner, accompanied by appellant, walked to a nearby bank branch and a convenience store with automatic teller machines. At each location, which was monitored by video, they attempted, but failed, to withdraw money from the victim's bank account.

Awaiting trial, appellant told a cell mate "the murder was an accident and it wasn't supposed to happen like that." She also told a friend "it was a kidnapping plot."

Appellant asserts that the evidence was insufficient for any rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which she was convicted. More specifically, appellant argues (a) the State failed to prove appellant was a party to the crimes and (b) the burglary conviction cannot stand because appellant lived in the victim's apartment and was authorized to permit Grovner to enter it. We disagree.

(a) A person may be convicted of a crime he or she did not commit directly upon proof that he or she was a party to the crime. See OCGA § 16-2-20. "Although mere presence at the scene of a crime is not sufficient to prove

5

that one was a party to the crime, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *Powell v. State*, 291 Ga. 743, 744-745 (1) (733 SE2d 294) (2012) (citations and punctuation omitted). Here the evidence showed that Grovner and appellant shared a criminal intent to murder the victim and access her bank account to enable them to live together away from the victim's watchful eye. See *Parks v. State*, 272 Ga. 353, 354-355 (529 SE2d 127) (2000) (evidence sufficient to enable jury to infer that defendant participated in a plan to commit the crimes). To carry out their scheme, appellant allowed Grovner to enter the apartment, although they both knew the victim would not permit it; appellant did not so much as lift a finger while Grovner beat her mother to death; she accompanied Grovner as he tried to withdraw money from her mother's bank account; she lied to her sister, feigning ignorance about their mother's whereabouts; and she attempted to cover up evidence of the crimes. It was for the jury, not this Court, to assess the credibility and weight of this evidence and determine whether appellant was a party to the crimes. See *Escutia v. State*, 277 Ga. 400, 402 (2) (589 SE2d 66) (2003). The evidence was sufficient to enable a rational jury to find appellant

guilty beyond a reasonable doubt of the crimes of malice murder, burglary, false imprisonment, robbery, tampering with evidence, and financial transaction card theft. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Escutia*, 277 Ga. at 402 (2).

(b) Addressing appellant's conviction for burglary more specifically, we note that the version of OCGA § 16-7-1 (a) applicable to this case provides that a person commits burglary when he enters or remains in the dwelling house of another without authority with intent to commit a felony or theft therein.[7] Here, as noted above, the victim made it clear to both Grovner and appellant that Grovner did not have permission to enter the victim's apartment. Compare *Bell v. State*, 287 Ga. 670, 672-673 (1) (c) (697 SE2d 793) (2010) (defendant's entry to victim's home was authorized). After all, the victim summoned police to the apartment on more than one occasion simply because Grovner had been there.[8] Moreover, appellant did not contend she had authority to admit Grovner to the

---

[7] OCGA § 16-7-1 was amended effective July 1, 2012, and applies "to offenses which occur on or after that date. Any offense occurring before July 1, 2012, shall be governed by the statute in effect at the time of such offense." Ga. L. 2012, pp. 899, 949.

[8] The victim also told a neighbor she should call police if Grovner came to her apartment.

apartment; she acknowledged that Grovner was not permitted in the apartment, but she helped him sneak in on several occasions by leaving the back door unlocked. Appellant testified that the victim paid the rent and all the bills; although appellant's social security check was deposited into the victim's account, the victim provided appellant with money whenever asked. And, on the night in question, Grovner gained entry to the apartment through that same back door with appellant's help. Under these circumstances, neither appellant nor Grovner could have reasonably believed that appellant was authorized to allow him to enter the victim's apartment for the purpose of killing the victim. See *Gonzales v. State*, 931 SW2d 574 (Tex. Crim. App. 1996) (defendant boyfriend could not reasonably believe his girlfriend was authorized to allow entry to her parents' home so he could kill them); *State v. Upchurch*, 332 N.C. 439 (421 SE2d 577) (1992) (defendant and victim's stepson, who was a resident in the victim's home, could not have reasonably believed stepson had authority to permit defendant to enter the victim's home to kill the victim). It follows that there was ample evidence to enable the jury to conclude that Grovner entered the victim's residence without authority. See *Glisson v. State*, 165 Ga. App. 342 (3) (301 SE2d 62) (1983) (whether entry was accomplished without authority is a

question for the jury).

(c) Although appellant does not challenge specifically her conviction for hindering the apprehension of a criminal, see OCGA § 16-10-50, she cannot be convicted for both malice murder and the hindering offense. See *Hampton v. State,* 289 Ga. 621, 622 (2) (713 SE2d 851) (2011). It follows that appellant's conviction and sentence for hindering the apprehension of a criminal must be vacated. See *Nazario v. State*, 293 Ga. 480, 486-487 (746 SE2d 109) (2013); *Slaughter v. State*, 292 Ga. 573, 575 (1) (740 SE2d 119) (2013).

2. In her second enumeration of error, appellant asserts the trial court erred in denying her demurrer to the indictment, which charged appellant and Grovner jointly for the victim's murder and the other crimes, even though Grovner had already been tried separately and convicted of the voluntary manslaughter of the victim. In this regard, appellant argues that Grovner could not be prosecuted more than once for the same crimes, see OCGA § 16-1-8, and that, therefore, the indictment gave the false impression that Grovner may still be held accountable for the victim's murder when, in truth, appellant faced that charge alone. We perceive no harmful error because the evidence demonstrated that both appellant and Grovner were parties to the crimes. Thus, appellant

9

could not have been harmed by the fact that Grovner was indicted along with appellant despite his previous conviction. See generally OCGA § 16-2-21.

3. Armentress Hill, who shared a cell with appellant while she awaited trial, testified that appellant told her Grovner admonished appellant not to say anything about the incident. Appellant argues the trial court erred in admitting Grovner's statement because, although hearsay statements made by a co-conspirator to further a conspiracy are admissible against fellow conspirators, such statements are inadmissible if they are made after the end of the conspiracy. See OCGA § 24-8-801 (d) (2) (E). Continuing the argument, appellant claims that at the time Grovner made the statement to her he had already confessed to police, thereby bringing the conspiracy to an end and rendering the statement inadmissible. This argument misses the mark because Hill's testimony could not be deemed inadmissible hearsay in this case against appellant. OCGA § 24-8-801 (d) (2) (A). On the contrary, appellant's statement to Hill was appellant's own and, therefore, it was admissible as a statement of a party opponent. See *Summerlin v. State*, 339 Ga. App. 148, 149 (1) (793 SE2d 477) (2016). And although appellant's admission referenced a statement made by Grovner, it was not offered to prove the truth of Grovner's statement. See

OCGA § 24-8-801 (c).

4. Next, appellant asserts the trial court erred in admitting hearsay statements made by her daughter, Zakiya, and sister, Shambra Pearsall, to Detective Southerland and Officer Fried.

(a) Detective Southerland testified Pearsall contacted her and told her that Zakiya said she heard the victim scream and saw appellant open one eye, but appellant did not do anything. The detective testified further that she then spoke with Zakiya who confirmed what Pearsall said — appellant did not get up when the victim was attacked; she was lying down with one eye open. The State introduced this evidence to counter the testimony of both Pearsall[9] and Zakiya.[10] Because appellant did not object to this evidence, she cannot assert the trial court erred in admitting it. See *Johnson v. State*, 292 Ga. 785, 787-788 (3) (741 SE2d 627) (2013). Accordingly, we examine this assertion for plain error. See *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).

---

[9] Pearsall testified, and denied Zakiya told her she heard the victim scream and that appellant opened one eye. She also denied telling Detective Southerland what Zakiya said.

[10] Zakiya, who was six years old when she testified at trial, denied appellant opened an eye when Grovner attacked the victim, and denied telling Detective Southerland that she did.

> To show plain error, [appellant] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."

*Mosley v. State*, 298 Ga. 849, 851 (2) (a) (785 SE2d 297) (2016) (citations omitted). Appellant cannot meet this test because the detective's testimony concerning Pearsall's and Zakiya's prior inconsistent statements was not hearsay. On the contrary, the detective's testimony was admissible to impeach the witnesses, or as substantive evidence. See OCGA §§ 24-6-613 and 24-8-801 (d) (1) (A).

(b) Officer Fried testified that he went to the victim's apartment before police discovered her body and spoke briefly with Zakiya, who asked him if he had nightmares; that he replied that he did and asked Zakiya why she asked that question; and that Zakiya told him she had nightmares about "killers." Appellant's objection to the officer's testimony, on the ground it did not comport with the requirements of the Child Hearsay Statute, OCGA § 24-8-820, was overruled. Even if Zakiya's statement to the officer was admitted erroneously, it is highly probable it did not contribute to the jury's verdict in view of Zakiya's own testimony that she witnessed Grovner kill the victim and

12

put her in the trunk of the car, combined with the strength of the other evidence against the appellant. See generally *Laney v. State*, 271 Ga. 194, 197 (8) (515 SE2d 610) (1999) (highly probable that erroneous evidentiary ruling did not contribute to jury's verdict).

5. Appellant posits that the trial court should have exercised its discretion as the thirteenth juror and awarded appellant a new trial because she was not permitted to present evidence of diminished mental capacity, coercion or battered person syndrome. Appellant does not assert the trial court erred by ruling out that evidence. She argues, however, that in light of the fact that Grovner was convicted of the lesser offense of voluntary manslaughter, her inability to present the aforementioned evidence was unjust, and that it was incumbent upon the trial court to rectify the injustice by granting appellant a new trial. We find no abuse in the exercise of the trial court's discretion as the thirteenth juror and in the denial of appellant's motion for new trial. See *Smith v. State*, 300 Ga. 532, 534 (796 SE2d 671) (2017).

6. Appellant next asserts that an unexplained delay in the entry of the trial court's order denying her plea in bar raises questions about the trial court's impartiality because it impeded her ability to appeal quickly. This assertion is

13

without merit. Here, appellant has failed to show that the unexplained delay in the entry of the order, by itself, demonstrates questionable conduct on the part of the trial court. Compare *Johnson v. State*, 278 Ga. 344 (602 SE2d 623) (2004) (trial judge's conduct throughout the course of the trial, including statements concerning defendant's guilt, raised reasonable questions concerning his partiality and demanded the grant of defendant's motion for recusal). Moreover, appellant cannot show she was harmed by the delay. Her appeal from the order denying her plea in bar was heard by this Court, which held that her plea was properly denied and that, therefore, the failure to obtain a stay of her retrial to allow for appellate review was irrelevant. See *Harvey*, 296 Ga. at 836-837.

7. Relying upon *Hall v. State*, 241 Ga. 252, 258 (8) (244 SE2d 833) (1978), overruled on other grounds, *Hamm v. State*, 294 Ga. 791, 796 (756 SE2d 507) (2014), appellant claims her sentence of life without parole was disproportionate because Grovner was sentenced to a term of years. In *Hall*, defendant was given a death sentence for armed robbery and felony murder, while his co-defendant, who was the triggerman, and was tried separately, received a life sentence. This Court conducted the mandatory statutory review

of the defendant's death penalty and found it to be disproportionate. No such review is mandated in non-death penalty cases. Accordingly, *Hall* is inapposite.

Grovner was convicted of voluntary manslaughter; appellant, who was 21 years old at the time of the murder, was found guilty of malice murder. Voluntary manslaughter is punishable by imprisonment for not less than one year nor more than twenty years. OCGA § 16-5-2 (b). The range of punishment for malice murder is death, life without parole, or life with the possibility of parole. OCGA § 16-5-1 (e) (1). Appellant's sentence did not exceed the statutory maximum; nor did it amount to cruel and unusual punishment. See *Washington v. State*, 285 Ga. 541, 542 (2) (678 SE2d 900) (2009).

8. Pointing out that the verdict form used in Grovner's case listed voluntary manslaughter as a lesser included offense of murder, appellant contends the preprinted verdict form given to the jury in this case was erroneous because it failed to set forth a voluntary manslaughter option. However, appellant did not object to the verdict form at trial. Accordingly, this contention can be reviewed only for plain error. See generally *Cheddersingh v. State*, 290 Ga. 680, 681 (2) (724 SE2d 366) (2012); *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011).

Because appellant and Grovner were tried separately, and because the evidence at *appellant's* trial did not support a claim that the beating death of the victim was the result of a sudden, violent, and irresistible passion resulting from a serious provocation, a charge on voluntary manslaughter — and a corresponding verdict form — was not warranted. See *Worthem v. State*, 270 Ga. 469, 470 (2) (509 SE2d 922) (1999). It follows that appellant has failed to show plain error. See *Shaw v. State*, 292 Ga. 871, 873-874 (742 SE2d 707) (2013) (plain error analysis requires appellant to show affirmatively that the error probably affected the outcome of the trial).

9. Finally, appellant asserts that trial counsel rendered ineffective assistance by failing to (a) object to the testimony of Detective Southerland (in which she recounted statements made to her by Pearsall, Zakiya, and Armentress Hill, all of whom testified at trial and were subjected to cross-examination by appellant) on the ground it constituted hearsay, (b) seek the recusal of the trial judge, (c) oppose the State's motion to exclude evidence of Grovner's conviction for voluntary manslaughter, and (d) pursue voluntary manslaughter as a lesser included offense.

To prevail on a claim of ineffective assistance of counsel, a

16

defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Terry v. State*, 284 Ga. 119 (663 SE2d 704) (2008), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Rector v. State*, 285 Ga. 714, 716-717 (6) (681 SE2d 157) (2009). Moreover,

"[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, supra at 689 (III) (A). The test "has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted." *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993).

*Anderson v. State*, 285 Ga. 496, 499 (3) (678 SE2d 84) (2009). With these guidelines in mind, we conclude, as set forth below, that appellant has failed to prove her ineffective assistance of counsel claims.

(a) Even if it can be said that trial counsel should have interposed a hearsay or confrontation clause objection to the testimony of Detective

17

Southerland,[11] appellant cannot show a reasonable likelihood that the outcome of the trial would have been different in view of the strong evidence of appellant's guilt. See *Phillips v. State*, 293 Ga. 756, 758 (2) (749 SE2d 699) (2013).

(b) Trial counsel testified at the hearing upon appellant's motion for new trial that he saw no basis upon which to seek the recusal of the trial judge, and appellant is unable to point to any ruling on the part of the trial judge, either before or during trial, which demonstrates he was biased against appellant. It follows that appellant has failed to prove deficient performance or prejudice. See *Battle v. State*, 298 Ga. 661, 670 (784 SE2d 381) (2016) (appellant failed to demonstrate both deficient performance and a reasonable probability the outcome of the proceedings would have been more favorable to him if trial counsel had filed a timely motion to recuse the trial judge).

---

[11] But see OCGA § 24-8-801 (d) (1) (A) ("[a]n out-of-court statement shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under Code Section 24-6-613 or is otherwise admissible under this chapter"); *DeVaughn v. State*, 296 Ga. 475, 478 (3) (769 SE2d 70) (2015) (confrontation clause objection to hearsay testimony is frivolous when declarant testifies at trial and is subject to cross-examination).

(c) The trial court granted the State's pre-trial motion to exclude evidence that, following his separate trial, Grovner was convicted of voluntary manslaughter. Relying on *White v. State*, 257 Ga. 236, 236-237 (356 SE2d 875) (1987) (one charged as an accessory to a crime may be entitled to show the principal was acquitted), appellant asserts trial counsel rendered ineffective assistance by failing to oppose the motion. However, evidence of Grovner's manslaughter conviction was not admissible pursuant to *White*. That is because appellant was not charged distinctly and exclusively as an accessory to Grovner's crimes. See *Davis v. State*, 296 Ga. 126, 128, n. 3 (765 SE2d 336) (2014) (pointing out that, although *White* was decided against the great weight of authority, its holding need not be reconsidered because the defendant was charged with murder, not distinctly as an accessory to co-defendant's crimes). Thus, unlike in *White*, appellant's guilt did not depend on the guilt of her co-defendant. Moreover, unlike in *White*, appellant's co-defendant was not acquitted; he was convicted of voluntary manslaughter. Thus, *White* does not apply to this case, and evidence of Grovner's voluntary manslaughter conviction was inadmissible. It follows that trial counsel did not act unreasonably in failing to oppose the State's motion. See *Bryson v. Jackson*, 299 Ga. 751, 754 (791

19

SE2d 43) (2016) (counsel did not perform deficiently by failing to file motion to present inadmissible evidence).

(d) Trial counsel testified at the hearing on the motion for new trial that instead of inviting the jury to find appellant guilty of voluntary manslaughter, he pursued an all or nothing strategy. This decision was within the broad range of professional conduct and did not constitute ineffective assistance. See *Wells v. State*, 295 Ga. 161, 166 (2) (758 SE2d 598) (2014).

Judgments affirmed in part and vacated in part. All the Justices concur, except Blackwell, J., who concurs in judgment only as to Division 1 (b).

Decided February 27, 2017.

Murder. Clayton Superior Court. Before Judge Simmons.

Viveca R. Famber Powell, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Assistant Attorney General, for appellee.