**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 13, 2020**

# In the Court of Appeals of Georgia

A19A2183. JENKINS v. THE STATE.
A19A2184. LEE v. THE STATE.
A19A2185. LENEAR v. THE STATE.

McFADDEN, Chief Judge.

Myron Lee, Issac Jenkins, and Keshawn Lenear were jointly tried before a jury for crimes relating to a shooting in Mitchell County. Lee was convicted of criminal attempt to commit felony murder, armed robbery, two counts of aggravated assault, and two counts of possession of a firearm during the commission of a felony; Jenkins was convicted of robbery by intimidation, aggravated assault, and possession of a firearm during the commission of a felony; and Lenear was convicted of robbery by intimidation. After the trial court denied their motions for new trial, the defendants filed these appeals.

Lee argues that the trial court erred by denying his motion for directed verdict on the count alleging criminal attempt to commit felony murder because attempted felony murder is not a crime in Georgia; that the trial court improperly commented on the evidence; and that the trial court erred in sentencing him. Jenkins argues that he received ineffective assistance of trial counsel. Lee and Jenkins both argue that venue of the robbery was in Dougherty County, not Mitchell County. All three defendants argue that the evidence does not support their convictions.

We agree with Lee that criminal attempt to commit felony murder is not a crime in Georgia, so we reverse that conviction. We affirm Lee's remaining convictions as well as Jenkins' and Lenear's convictions.

1. *Sufficiency of the evidence*.

Viewed in the light most favorable to the jury's verdict, *Winters v. State*, 305 Ga. 226, 227 (1) (824 SE2d 306) (2019), the evidence presented at trial showed that the crimes stemmed from a dispute with the victim's cousin over a debt related to the rental of a U-Haul. Lee, Datialion Jenkins, and Jenkins' two brothers, defendants Issac Jenkins and Keshawn Lenear, confronted the victim in the parking lot of a barbershop in Dougherty County, surrounded him, and told him to call his cousin. Lee tapped on his leg and told the victim that he was "strapped."

2

Lee told the victim to get into Lee's car, and Lee drove the victim, Datialion Jenkins, Issac Jenkins, and Lenear to a dirt road in Mitchell County. Issac Jenkins kept a gun pointed at the victim as they were driving. Once they stopped, Lenear handed Lee a gun from the glove compartment, and Lee ordered the victim to get out of the car. Issac Jenkins demanded the victim's wallet while pointing a gun at him. The men went through the victim's wallet and took his cell phone. Lee called the cousin using the victim's cell phone, which was on speaker phone. Lee told the cousin that was the last time he would speak to the victim. Lee shot the victim. The defendants began to drive off, but backed the car up, and Datialion Jenkins shot the victim again.

Datialion Jenkins pled guilty to aggravated assault and robbery and testified at trial. At his plea hearing, he had testified that his brothers knew what was planned for the victim, but at trial he testified that he had lied about his brothers to get his plea deal. An investigator who was working courtroom security testified at the defendants' trial that after Datialion Jenkins had testified, while he was being held in a room adjacent to the defendants, he told the defendants through the wall that they should not worry because he was "taking the rap for it."

This evidence was sufficient to enable a rational trier of fact to find the defendants guilty beyond a reasonable doubt of the crimes of which they were convicted (other than Lee's conviction of attempted felony murder, which is addressed in Division 2 below). *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. *Attempted felony murder*.

Lee argues the trial court erred in denying his motion for directed verdict of acquittal on the attempted felony murder count because attempted felony murder is not a crime in Georgia. We agree.

As we noted in *Summerlin v. State*, 339 Ga. App. 148, 154-155 (4) (793 SE2d 477) (2016), whether attempted felony murder is a crime in Georgia is an issue of first impression. We were not required to resolve the issue in *Summerlin* because the attempted felony murder offenses were vacated as a matter of law by the trial court's merging them with the attempted malice murder offenses. Today the question is squarely before us.

The felony murder statute provides: "A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). "[F]elony murder does not require

4

intent to kill; rather, the defendant only must have intended to commit the underlying felony." *Oliver v. State*, 274 Ga. 539, 540 (2) (554 SE2d 474) (2001).

The attempt statute provides: "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. "Attempt is a specific intent crime in that it requires a showing that the actor intended to commit the substantive offense." Kurtz, Ga. Criminal Offenses and Defenses, Attempt and Solicitation (2019 ed.).

So the intent required to support a conviction of felony murder is the intent to commit the underlying felony that unintentionally results in the victim's death, *Oliver*, supra. The felony murder statute does not require the state to prove that a defendant intended to commit felony murder. See OCGA § 16-5-1 (c). But as set out in the attempt statute, OCGA § 16-4-1, the intent required to support a conviction of criminal attempt is the intent to commit the specific crime. "The offense of attempt requires an intent to commit a specific offense, while felony murder does not involve an intention to kill." *Summerlin*, 339 Ga. App. at 154 (4) (citation and punctuation omitted). So attempt to commit felony murder would entail intent to perpetrate an unintentional killing. As the Supreme Court of Colorado recognized, this would be

5

"a logical impossibility." *Waits v. People*, 724 P2d 1329, 1341 (Colo. 1986). "There is no such criminal offense as an attempt to achieve an unintended result." *Summerlin*, 339 Ga. App. at 154 (4) (citation and punctuation omitted).

As we observed in *Summerlin*, the majority of jurisdictions that have considered the question have concluded that attempted felony murder is not a crime. See, e.g., *State v. Sanders*, 827 SE2d 214 (W. Va. 2019); *Bruce v. State*, 317 Md. 642, 646-647 (IV) (566 A2d 103) (1989); *Waits*, supra, 724 P2d at 1341; *State v. Price*, 104 N.M. 703 (726 P2d 857) (1986); *State v. Darby*, 200 N.J.Super. 327, 329-332 (I) (491 A2d 733) (1984); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 50-53 (456 A2d 171) (1983); *Head v. State*, 443 NE2d 44, 47-51 (I) (Ind.1982).

Under the plain language of the felony murder and attempt statutes, it is logically impossible for a person to attempt to commit felony murder. Accordingly, we conclude that attempted felony murder is not a crime in Georgia. See *Wilson v. State*, 53 Ga. 205, 206 (1874) (reversing conviction of attempted assault; "As an assault is itself an attempt to commit a crime, an attempt to make an assault can only be an attempt to attempt to do it, or to state the matter still more definitely, it is to do any act towards doing an act towards the commission of the offense. This is simply absurd.").

6

3. *Commenting on the evidence.*

Lee argues that the trial court improperly commented on the evidence. The comments were the judge's explanations of his reasons for rulings on evidentiary objections or concerned undisputed facts, so they did not violate OCGA § 17-8-57.

OCGA § 17-8-57 (a) (1) provides, "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." However, where, as here, a party does not make a timely objection to an alleged violation, we review the alleged violation only for plain error. OCGA § 17-8-57 (b).

> To establish plain error, [Lee] must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. To show that the error affected his substantial rights, [Lee] must demonstrate that it caused him harm, meaning that the outcome of the trial court proceedings likely was affected.

*Hightower v. State*, 304 Ga. 755, 759 (2) (b) (822 SE2d 273) (2018) (punctuation and citations omitted). Further, "[s]hould any judge express an opinion as to the guilt of the accused, [we] shall grant a new trial." OCGA § 17-8-57 (c).

7

OCGA § 17-8-57 does not apply to all expressions of opinion by a judge, however. The statute "does not generally apply to colloquies between the trial court and counsel that concern the admissibility of evidence." *Felton v. State*, 304 Ga. 565, 572 (2) (c) (819 SE2d 461) (2018). Most of the comments that Lee challenges

> arose during colloquies with counsel and within the context of the trial court's ruling on an evidentiary objection. Remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence. Insofar as the trial court was explaining its rulings on evidentiary objections, [Lee] cannot meet the first prong of the plain error test that there was a deviation from any rule.

*Felton*, 304 Ga. at 572 (2) (c).

Lee argues that he is entitled to a new trial under OCGA § 17-8-57 (c), which does not require a plain error analysis, because the trial court commented on his guilt during cross-examination of the victim. But these comments concerned only undisputed facts and occurred in the context of the trial court addressing an objection, so they do not mandate a new trial.

Lee's attorney was asking the victim whether he actually had seen a gun at the barbershop. The victim explained that Lee had not pulled out a gun but instead had patted his pocket "[a]s in a gun was there." The victim elaborated that, "All I know

8

is that he hit his leg and said, I'm strapped. When he said he was strapped, I'm *assuming* he had a gun." Lee's counsel instructed the victim not to assume. The assistant district attorney objected to defense counsel instructing the victim. The following then occurred:

> **TRIAL COURT**: I have understood him to testify several times that the strapped part was he thought a gun was on Mr. Lee and there was four of them and for those reasons, he got in the car. He was outnumbered and one of them had a gun is why he got in the car. If I've missed it, you know, if I misunderstood it, somebody can correct me. But that's what I understood his testimony was.

> **LEE'S COUNSEL**: Your Honor, I guess my line of questioning is just that things are not always what we assume and that's the reason we see them. That's where I was trying to go with it, but I'll move on.

> **TRIAL COURT**: You can beat that all day, you know, about whether he had a gun or didn't have a gun. He didn't see a gun. But I understood that he was led to believe that a gun was present by your client's actions. That's kind of what I hear.

> **LEE'S COUNSEL**: Your Honor, I will move on.

> **TRIAL COURT**: Okay.

**LEE'S COUNSEL**: I think we've established that he's saying he never saw a gun.

**TRIAL COURT**: Fine, go ahead.

Lee argues that the trial court's statement that the victim "was led to believe that a gun was present by your client's actions" was a comment on Lee's guilt, thus requiring a new trial under OCGA § 17-8-57 (c). "Courts of this [s]tate have always recognized . . . that a statement by a trial court concerning a fact that is uncontested or is not in dispute does not constitute a violation of [OCGA § 17-8-57]." *Sauerwein v. State*, 280 Ga. 438, 439 (2) (629 SE2d 235) (2006). See also *McKee v. State*, 275 Ga. App. 646, 650 (4) (621 SE2d 611) (2005) ("To violate the statute, the comments must focus on a disputed issue of material fact."). That the victim believed Lee had a gun because of Lee's actions, even though he did not see a gun, is not disputed.

Further, the comment arose in the context of the colloquy between the trial court and defense counsel regarding the assistant district attorney's objection to defense counsel's instruction to the victim not to assume. (The trial court was not required to rule on the objection because defense counsel said he would "move on.")

The comment at issue in this case was made by the judge in the context of a colloquy concerning an . . . objection [related to the presentation of

evidence] and the ruling of the court on that objection. Accordingly, the statement did not amount to an expression of an opinion of the proof or the guilt of the accused. Moreover, at the close of the trial, the court specifically instructed the jurors as follows: "[Now, b]y no ruling or comment that the court has made during the progress of the trial has the court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence[,] or upon the guilt or innocence of [any of] the defendants." The court also instructed the jurors that they, alone, must determine the credibility or believability of the witnesses, [determine the facts from] the evidence, and determine whether a witness had been successfully impeached. Under these circumstances, we conclude that the judge's comment did not violate . . . OCGA § 17-8-57.

*Whatley v. State*, 342 Ga. App. 796, 809 (3) (f) (805 SE2d 599) (2017).

4. *Sentencing*.

Lee enumerates that the trial court erred in its sentence. But he does not support the enumeration with argument. Lee has thus abandoned this enumeration of error. Court of Appeals Rule 25 (c) (2).

5. *Effective assistance of counsel*.

Issac Jenkins argues that his trial counsel rendered ineffective assistance in multiple ways. We disagree.

To succeed on his claims of ineffective assistance, Issac Jenkins

11

must establish that his counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show deficient performance, [Issac Jenkins] must prove that his lawyer performed [her] duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [Issac Jenkins] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. To establish prejudice, [Issac Jenkins] must prove that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. We need not address both parts of the *Strickland* test if [Issac Jenkins] makes an insufficient showing on one. See id. at 697.

*Thornton v. State*, __ Ga. __, __ (3) (__ SE2d __) (Case No. S19A0755, decided Oct. 21, 2019) (citations and punctuation omitted).

(a) *Cross-examination.*

Issac Jenkins argues that trial counsel was ineffective because of numerous alleged deficiencies in her cross-examination of witnesses. He argues that counsel should have cross-examined the victim's uncle about the information he gave to police, specifically that he had heard on the street that Issac Jenkins was involved in the crimes, which, Issac Jenkins argues, was the only evidence of his involvement. He argues that trial counsel should have cross-examined the lead detective about suggesting Datialion Jenkins' and Issac Jenkins' names and identities to the victim; about texting photographs from the uncle's cell phone to the detective who prepared the photographic line-ups; and about the allegedly misleading arrest-warrant application. He argues that trial counsel should have cross-examined the detective who prepared the photographic line-ups about his rationale for including Issac Jenkins' photograph. Finally, he argues that trial counsel should have cross-examined Datialion Jenkins and other witnesses about the circumstances of Datialion Jenkins' statement.

Trial counsel testified at the motion for new trial hearing that her cross-examination of the witnesses was based on Datialion Jenkins' testimony at his guilty plea hearing. From that testimony, she understood that Datialion Jenkins would testify that Issac Jenkins was present at the shooting. So, counsel believed, cross-

examining witnesses about the source of Issac Jenkins' name would not have added anything. She explained that she did not ask questions regarding whether it was improperly suggested that Datialion Jenkins was involved because the issue was moot, given his admitted involvement by the time of trial. She explained her other choices regarding questioning the witnesses, and explained that although she could not remember specifically what was going through her mind, any decision not to cross-examine a witness was based on the concern that the witness would say something that hurt Issac Jenkins.

> [C]ounsel's decisions about . . . the extent of cross-examination are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances. We cannot say that trial counsel's decisions [regarding the] cross-examin[ation of these witnesses] were so unreasonable that only an incompetent attorney would have made them.

*Roberts v. State*, 305 Ga. 257, 265-66 (5) (d) (824 SE2d 326) (2019) (citations and punctuation omitted).

(b) *Jury instruction on aggravated assault.*

Issac Jenkins argues that trial counsel was ineffective for failing to object to the trial court's definition of aggravated assault in response to the jury's request for

14

that definition. Instead of instructing the jury that the state had to prove that the defendant — singular — attempted to cause a violent injury to the alleged victim, the court instructed the jury that, "It's only necessary that the evidence show beyond a reasonable doubt that the defendants attempted to cause a violent injury to the alleged victim.". Assuming without deciding that counsel performed deficiently by failing to object to this instruction, Issac Jenkins has not shown that "there is a reasonable probability that, but for [this alleged] deficiency, the result of the trial would have been different." *Thornton*, __ Ga. at __ (3). See *Jackson v. State*, 316 Ga. App. 588, 597 (5) (730 SE2d 69) (2012) ("the trial court's slip of the tongue [in instructing the jury] cannot be said to have misled or confused the jury").

(c) *Maintaining Issac Jenkins' defense*.

Issac Jenkins argues that trial counsel was ineffective because she did not maintain the defense that Issac Jenkins was not present at the scene of the crime. Counsel testified that although the defense going into trial was that Issac Jenkins was not present, consistent with the statement he had given to police, as they "went further into the trial and as the case closed, we realized that that defense was not going to be very believable to the jury, and . . . we did have to change our strategy." Counsel's decision to change "strategy was reasonable, and as a general rule, matters of

15

reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." *Lynch v. State*, 291 Ga. 555, 558 (2) (e) (731 SE2d 672) (2012).

(d) *Failure to file a general demurrer to attempted felony murder*.

Issac Jenkins argues that trial counsel was ineffective for failing to file a general demurrer to the charge of attempted felony murder. Assuming without deciding that counsel performed deficiently in this manner, Issac Jenkins has not shown prejudice because the jury found him not guilty of attempted felony murder.[1] See *Sigman v. State*, 287 Ga. 220, 222 (2) (695 SE2d 232) (2010). Although Issac Jenkins asserts that the inclusion of this count prejudiced his chances for a fair trial on the other counts, he has made no specific argument and "[s]peculation is insufficient to establish prejudice under *Strickland*." *Johnson v. State*, 290 Ga. 382, 386 (2) (d) (721 SE2d 851) (2012).

(e) *Cumulative effect of alleged deficiencies*.

Finally, Issac Jenkins argues that the cumulative effect of his trial counsel's alleged deficiencies prejudiced the outcome of his trial. We do not "evaluate . . . the cumulative effect of non-errors," such as the issues discussed in Divisions (5) (a) and

---

[1] As discussed above, the jury found Issac Jenkins' co-defendant, Lee, guilty of attempted felony murder.

16

(c). *Thornton*, supra, __ Ga. at __ (3) (d) (citation and punctuation omitted). "Here, the cumulative prejudice from any assumed deficiencies discussed in (Divisions [5 b] and [d]) is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies." *Smith v. State*, __ Ga. __, __ (3) (c) (834 SE2d 1) (2019) (citations and punctuation omitted).

6. *Venue*.

Issac Jenkins argues that the state did not prove venue of the count charging robbery of the cell phone. Lee argues that venue of that count was in Dougherty County, where the barbershop was located. We hold that sufficient evidence allowed the jury to conclude that the robbery occurred in Mitchell County.

We review

a challenge to the sufficiency of the venue evidence just like we review a challenge to the evidence of guilt: we view the evidence of venue in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

*Worthen v. State*, 304 Ga. 862, 865 (3) (a) (823 SE2d 291) (citation and punctuation omitted). "Whether the state met its burden as to venue is a matter resting soundly within the purview of the jury, and ambiguities in the trial evidence must be resolved by the trial jury, not appellate courts." *Scott v. State,* 348 Ga. App. 634, 635 (2) (824 SE2d 91) (2019) (citation omitted).

"Venue for the crime of armed robbery is the location where the victim lost complete dominion over the property taken." *Scott*, 348 Ga. App. at 635 (2). One of the investigators testified at trial that the victim had told him that when he and the defendants arrived at the Mitchell County location where he was shot, the defendants went through the victim's wallet and took his cell phone. This evidence allowed the jury to conclude that the robbery of the cell phone occurred in Mitchell County.

*Judgment affirmed in Case No. A19A2183 and A19A2185. Judgment affirmed in part and reversed in part in Case No. A19A2184. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps concur*.